Reed et al. v. Kemp.

---

John G. Reed *et al.*, Appellants, *v.* Edward D. Kemp, Appellee.

### APPEAL FROM BUREAU.

A defendant who files a cross bill must take steps to have it answered, etc., and have a hearing upon it when the original is heard.

An obligee may make immaterial alterations in a bond, if they are consistent with the true contract of the parties.

There is no presumption of law arising upon the bare insepction of the face of an instrument, to fix the fact of its alteration. Suspicions may arise out of the inspection, but the question must be determined by proofs.

Deeds and other instruments relating to titles of real estate, if properly acknowledged and recorded, may be read in evidence without proof of their execution; but when not so acknowledged, they may be filed for record and operate as notice; but when used as evidence, their execution must be proved.

An instrument, affecting or relating to title to real estate, may be recorded, although not proven or acknowledged; and will operate as constructive notice to subse-

Reed et al. *v.* Kemp.

quent purchasers and creditors, and common law proof of its execution will be sufficient.

If, before filing an instrument affecting real estate, a second contract is made for the same estate, if the first executed instrument is first placed for record, it will be sufficient to protect the party holding under it.

ON the 23rd of December, 1852, Edward D. Kemp filed a bill against John G. Reed, for a specific performance of the following contract:

"KNOW ALL MEN BY THESE PRESENTS, That I, J. G. Reed, for and in consideration of the sum of sixty-five dollars, to me in hand paid by E. D. Kemp, do bind myself, my heirs and administrators by these presents, unto Edward D. Kemp, his heirs or assigns, or administrators, in the penal sum of five hundred dollars, to make and deliver unto said Kemp a good and sufficient deed of the east half of the south-west quarter of section twenty-four, township sixteen north, six east, in Bureau county, Illinois, as soon as the deed can be obtained from the general land office.

In witness whereof, I have set my hand this 12th day of July, 1851.

J. G. REED."

"The foregoing instrument was filed for record July 9th, 1852, and duly recorded on book C. of mortgages, page 296.    J. H. OLDS, Recorder."

The following alterations are made in this paper. The insertion of the words " I, J. G. Reed," in the beginning of the instrument; the alteration of the word " three " to " five," in expressing the consideration of the bond, and the erasing of the figures " 12," after the word " July," and putting them before.

The process was served on Reed, and made returnable to 2nd Monday in January, 1853. After the commencement of the suit it was discovered that Reed had conveyed to Atkinson. In January, 1853, leave was taken to amend, by making Atkinson a party. On the 15th March, 1853, Atkinson was made a party.

Reed was called on to answer, not under oath; Atkinson, under oath.

At March term, 1853, they both imperfectly answered, and obtained leave to amend their answers.

The bill, as amended, charges Atkinson with express notice of the contract between Kemp and Reed.

At the October term, 1853, Atkinson and Reed both filed new answers, denying all the equities of the bill. Reed denies that the contract was for the sale of the property, but says it was intended to secure a debt, and sets up certain alterations in the instrument. Atkinson answered under oath; denies the plaintiff's equity; sets up, that on the 24th May, 1852, he purchased this tract of land, among others, of Reed, for ten thousand dollars, according to the terms of a title bond, which he sets out; says the purchase was made for a valuable consideration;

that on the 23rd of July, 1852, a deed was made by Reed of this, among other land, to him, in pursuance of the contract of May 24, 1852, and that he paid Reed several thousand dollars in money, and gave his notes and mortgage for the balance; says that when he contracted, he had no suspicion that any claim existed on the property, that no contract was recorded, and he never heard of any until long after he sold the property to the Duffield mining and transportation company, which was on the 1st January, 1853, before he was notified of any suit.

On the 18th of October, 1853, Atkinson filed a cross bill against Reed and Kemp, and Reed filed a cross bill against Kemp, but it does not appear that they have ever been answered.

The recorded copy of Kemp's agreement omits "dollars," after "sixty-five."

At January term, 1854, Atkinson moved to set down for hearing on bill and answer. Kemp moved to strike out amended answer. The court refused both motions, allowed Atkinson's answer to stand, and gave Kemp leave to amend by making new parties. Kemp amended by filing a new bill, making the Duffield company parties, and calling on Reed and Atkinson to answer, but not under oath.

The Duffield company answer, and set out the alterations in the instrument; deny that it is the same instrument referred to in the original bills; set up Atkinson's defense of purchase without notice; deny that Reed and Kemp's contract was for a sale, but was a security for a debt; say that Atkinson contracted to buy before the agreement was recorded; deny that Atkinson had any notice; allege that they bought without notice; that they have made large improvements and discoveries of coal mines, which have enhanced the value of the adjoining property of Kemp, and insist that it would be grossly unjust to set aside their conveyance.

The following facts appear:

First. That Reed did make the agreement of July 12, 1851.

Second. That since it was made, it has been altered, in Kemp's possession, and consequently by him, as set forth in his answer.

Third. That on the 24th of May, Atkinson made the contract for the purchase of the property, and then, or immediately after, caused Ballou to search the records, and there was no record of the agreement between Reed and Kemp, and that Atkinson had no actual notice of this contract until the notice of the bill on him March 15, 1853.

Fourth. That on the 9th of July, 1852, Kemp recorded his agreement in book C of mortgages, and it has never been re-

corded among the deeds, and was not acknowledged before recording.

Fifth.  That on the 13th of July, Atkinson paid Reed $100 on the contract.  On the 23d of July, 1852, he paid him $3,233, gave him his notes and mortgage for the balance of the purchase money, and took his deed for the property, which was recorded in October following, before any suit was brought.

Sixth.  That on 1st July, 1853, before any notice of suit to him, he conveyed, by deed, for $400, a valuable consideration, this land among others to the Duffield company.

Seventh.  That Atkinson, after his deed from Reed, took possession, and gave possession to Duffield company when he sold.

WHITTAKER and GRANT, T. L. DICKEY and W. H. L. WALLACE, for Appellants.

B. C. COOK and M. T. PETERS, for Appellee.

SCATES, C. J.    Five questions have been presented and pressed upon our attention, in the argument of this cause :· First, That cross-bills have been filed and have not been answered ; Second ,The execution of the bond by Reed ; Third, The alteration of the bond by Kemp ; Fourth, Recording of the bond as notice ; and Fifth, Subsequent purchases, without notice.    Upon all these points, our opinion is with the defendant.

Revised Statutes of 1845, p. 96, secs. 24 to 29, prescribe that defendant may, after answer to the bill, file cross-bills, and thereupon, like rules for answers thereto, may be taken, and answers shall be evidence as in original suits.    The cross-bill under our statute is held to be an adjunct to the original, and requires no service.    *Fleece* v. *Russell et al.*, 13 Ill. 32. Still the party should take some step in it, in order to obtain an answer, make an issue and have a hearing at the same time as the original.    Simply filing a cross-bill, without taking any further step in, or notice of it, will not be allowed to hedge up the way and suspend the rights of original complainant to proceed with, and have a hearing of his cause.    Such seems to us to have been the course taken with one of these cross-bills, if indeed it be not answered by the one only answer filed, under a rule to answer (defendant's cross-bill.)    The rule and the answer were both treated as embracing all that was necessary to be done ; and we see and hear nothing more of the matter, until the question is raised in this court, that one of the cross-bills has not been answered.    We think it too late ; the party

must be considered as either having abandoned his cross-bill or waived any other or separate answer than was made.

The testimony to Reed's signature to the bond, corroborated as it is by so many strong circumstances showing his recognition and admission of a contract about the land, we deem altogether sufficient and satisfactory, and we think it unnecessary to recapitulate it.

The alterations admitted by Kemp to have been made by him, are immaterial. Nor indeed can we regard any alleged alterations to be material; to alter the sense, liability, or the obligation of the bond. If it were set up, or in fact made, as a mortgage, the alteration of the consideration from sixty-three to sixty-five, taking that to be the amount of the debt, would be a material one, and enlarge the amount of the obligation. So would a change in the penalty of a bond. But it would seem to be otherwise if the mere recital of a consideration in a deed or contract, for the simple and sole purpose of showing that there was a valuable consideration paid, or to be paid. Such appears to us to be the character of this recital, and the object of expressing the amount paid in this case, and it can make no difference in the validity or obligation, whether it were five or sixty-five. There is no presumption of law arising upon the face of an instrument from bare inspection of its appearances, whether it has been, and if so, when, altered from the true contract; such appearances may throw suspicion and distrust upon the instrument, but it is a question of fact and not of law. *Gillett et al.* v. *Sweat*, 1 Gil. R. 489. In *Walters* v. *Short*, 5 Gil. R. 256, the court express dissatisfaction with a rule of presumption in favor of the alteration being made at the time of the execution of the instrument; but while they seem to incline to a contrary presumption, they lay down no rule on the subject, as to a presumption in law at all, but seem to put it, as we think it should be, upon the matter of fact. The party producing such an instrument, is called upon for explanations, and if he fail to give them, suspicion may become the conviction of fact in the mind of the court or jury, that such alterations, or appearances of alteration, were subsequent to the execution and delivery. Such a conclusion seems strangely preponderant in the mind of the court in that case. Still these explanations may, themselves, be found on the face of the paper. See 2 Stark. Ev. 254; see also *Cumberland Bank* v. *Hall*, 1 Halstead R. 215.

A bond is valid without inserting the name of the obligor in the body of the bond. *Ex parte Fulton*, 7 Cowen R. 484. So the insertion afterwards, is an immaterial alteration. So may "year" be inserted, when it will not alter the obligation of the

contract. *Hunt, administrator,* v. *Adams,* 6 Mass. R. 519. So the inserting of "pump and well of water" into a conveyance, has added nothing, as they passed without. *Bowen* v. *Pinkham,* 18 Pick. R. 172. Prefixing as a caption to an auction sale, the words "sales at auction, March 6, 1826," was held immaterial. *Nichols* v. *Johnson,* 10 Conn. R. 196. But these must be done innocently, and without a fraudulent design, otherwise they will vitiate. 1 Greenleaf Ev., Secs. 567, 568, 569. Tested by all these examples, and compared with others reported, and by the strictest scrutiny into the apparent or supposed *motive in* this instance, and we still find nothing which will authorize us to set this contract aside. Ignorance is the most apparent motive. While we sustain the contract, however, we will not withhold an expression of our decided disapprobation of all, or any liberties of this character, with writings by which others are bound. No advantages are ever gained, and most frequently much injury is done the party himself, by the suspicion and distrust thrown upon his acts and his motives.

We are all agreed, that, admitting that Kemp made them, they are sufficiently explained by the proofs, are consistent with the true contract of the parties, and it is valid and binding.

The fourth point involves a construction of the recording acts, in relation to unacknowledged contracts being constructive notice, when recorded.

In *Bourland* v. *The County of Peoria et al.,* in this volume, we have noticed the several changes in the time for recording title papers, up to the act of 1833, which gave them effect and made them notice from the filing, as to all creditors and subsequent purchasers, and void as to them until such filing; and we have adverted to the act of 1827, which embraced all contracts and agreements concerning or affecting lands in law or equity. In the Revised Statutes of 1845, the language is, if possible, still more comprehensive, and requires "deeds and *other instruments relating* to or *affecting* the *title* to real estate to be recorded." (p. 108, Sec. 22.) Before they can be recorded, they must be acknowledged or proved, as provided in Sec. 16, p. 105. Those so acknowledged or proved, may be read in evidence without further or other proof of execution; Sec. 25. Where not so acknowledged or proved, they may still be filed, and operate as notice and take effect; but for purposes of evidence, their execution must be proven as at law, before the recording acts; Sec. 28, p. 109. Similar provisions on p. 305, Sections 25, 26, give a like effect and notice to levies of attachments and executions from foreign counties, or attachments in the same, from the filing of a certificate of the levy with the recorder.

This bond was not acknowledged. Two questions are raised upon this state of the facts: That no instrument, without some sort of acknowledgment, is entitled to be filed or recorded, and doing so will not help them, or amount to any kind of notice.

It is so held in Connecticut under a recording act, limited to such legal instruments, deeds, conveyances and mortgages as convey title. None others are provided for or required to be recorded. *Carter* v. *Champion,* 8 Conn. R. 554; *Sumner* v. *Rhodes,* 14 Conn. R. 138. So, in *Galt* v. *Dibrell,* 10 Yerg. R. 154; *De Witt* v. *Moulton,* 17 Maine R. 418; *Lessee of Heister* v. *Fortner,* 2 Binn. R. 42; *Brown* v. *Budd,* 2 Carter Ia. R. 445; *Halsteads* v. *Bank of Kentucky,* 4 J. J. Marsh. R. 558; *Lessee of Shultz* v. *Moore,* 1 McLean R. 527; *Lewis et al.* v. *Baird et al.,* 3 McLean R. 63, 64, 65; *Astor* v. *Wells,* 4 Cond. R. 513; *James* v. *Morey,* 2 Cowen R. 295; *Tillman* v. *Cowand,* 12 Smeed and Marsh. R. 266; *Thompson* v. *Thompson,* 2 How. Miss. R. 745. So the doctrine is summed up by Judge Story, 1 Story's Eq. Jurisp. Sec. 404; *Chouteau* v. *Jones et al.,* 11 Ill. R. 320. I have referred to these decisions to show that they were made upon statutes differing from ours; some excluding from registration and record, deeds, etc., which were too defective to pass the estate; others, for want of compliance with the law in relation to acknowledgments. Our statute has introduced a very different policy, both as to the kinds and character of the instruments and the acknowledgments. In its language it comprehends everything that may relate to or affect the title, and requires all such to be recorded, without any qualification as to whether they be sufficient in law, or not, to effectuate the object purported on their face. It would seem to us to be the intention of the legislature, in general, to make the registry and recording books, and the filing of levies, etc., as complete a depository as possible of the State, of land titles, as they may be presented and affected by conveyances, contracts, incumbrances and liens. All such are not included, such as resulting trusts, mechanics' and vendor's heirs, but most are. This bond was undoubtedly within the meaning of the act, and required to be filed and recorded to have effect as to creditors and purchasers. It is in the same enlarged sense and comprehensive view that we have regarded and interpreted the meaning of the legislature, expressed in the 23rd section, as including unacknowledged writings, as among those "required to be recorded," giving them effect from, and making them void until, such filing as to all creditors and subsequent purchasers. When they are acknowledged or proved, according to law, proof of their execution is dispensed with. Although not recorded, and if recorded, also, a copy of the record is proof, in case of loss,

etc., of the original; Sec. 25. The object of the acknowledgment or proof, in the mode prescribed by the act, seems to be twofold : to establish its due execution, and to entitle it to record; not to being filed, giving to the act of recording the additional effect of making a copy of the record evidence under certain circumstances. The *requirement* of the 22nd section to record all deeds and other instruments relating to or affecting the title to real estate, is general, and embraces all that so relate, or have such effect upon title, and is not qualified or confined to such of them only, as are duly and legally, or defectively acknowledged or proved. But before they are *entitled* to be recorded, they must be acknowledged or proved, as prescribed in the 16th and 18th sections. The 23rd section speaks generally of all those " *required* " to be recorded, and declares they shall take effect from the filing, and makes them void *until* the filing.

In reaching the true meaning of the whole act, it is worthy of note, that the 25th section, in regulating the effect of the acknowledgment, and the additional effect of its recording, embraces the same instrument in two relations, one to the land as affecting its title, and therefore, " required " to be recorded, and the other, to its character of evidence, and " entitled " to be recorded. Such as are " required or entitled," shall be taken as evidence, etc.

The several sections, therefore, have reference to distinct parts of one general system. The 22nd declares what kind of instruments shall be recorded; the 23rd declares when and how they shall take effect to secure the interest to the purchaser, as between him and subsequent purchasers, or creditors; the 25th fixes their character generally, as evidence, when acknowledged or proved only, and also when recorded. The 28th section is for a very different object; it is to establish and declare their effect, as a deed or contract, as constructive notice to subsequent purchasers and creditors ; and this they shall have from the filing, " though not acknowledged or proved according to law." But before the instrument can be read for the purpose of showing of what the party had this constructive notice, the " defects of such acknowledgement or proof" must be supplied by proof of its execution, " in the manner required by the rules of evidence, applicable to such writings," that is, at common law, instead of the statutory mode.

The phraseology, " not acknowledged or proven *according* to law," and " the *defects of such* acknowledgment or proof," it is contended, implies that attempts have been made to take acknowledgments or proof, which are wanting in some prerequisite, and excludes those where there was a total neglect.

The language is capable of this restricted implication, but the full scope and spirit of our recording acts, does not require us to so limit their meaning, when they have used language of much broader and more general import, and which, in this larger sense, does not conflict, but harmonizes, with, and more fully carries into effect the general objects and spirit of the whole system.

I must think that where there is no attempt at an " acknowledgment or proof " of the execution under the statute, that the instrument is literally within the phrase of " not acknowledged or proven according to law," and that common law proof of the execution would " supply the defects of such acknowledgment or proof " under the statute.

I have examined these provisions the more critically and prolixly, because it is the first time the question has been raised. While this court, in *Chouteau* v. *Jones et al.*, 11 Ill. R. 320, recognized the general rule laid down in the cases cited above, in relation to deeds recorded under the acts of 1819 and 1822, yet they applied the present rule contended for by the court, to a defective acknowledgment under those acts, as cured under the act of July, 1837, similar to those now in force. And the court in *Martin* v. *Dryden et al.*, 1 Gil. R. 213, 214, seem to regard it as the true construction of the acts.

The second objection is, that although such writings may become notice by filing, or filing and recording, yet, under the 23rd section they take effect at the filing, and " until the same shall be filed for record," they shall be " adjudged void," as to all " creditors and subsequent purchasers, without notice." Therefore, if before such filing, a lien attaches, or a contract or conveyance is executed to a subsequent purchaser, the filing is too late to change, either with constructive notice, even though made before the filing of the certificate of levy of the creditor, or the deed or contract of the subsequent purchaser. That the race of diligence is not open to the first purchaser by filing, at any time before the filing of the creditor or subsequent purchaser.

This point is new, and is against the received opinion of the true meaning of the law. The court seems to take a different view of it, though it was not directly in judgment, where a creditor was concerned, in *Robinson* v. *Rowan*, 2 Scam. R. 500. The question was more directly before the court, and between purchasers, in *Doyle et al.* v. *Teas et al.*, 4 Scam. R. 252. The same view, as to a creditor's lien attaching, was taken in *Martin* v. *Dryden et al.*, 1 Gil. R. 213 ; *Cook* v. *Hall*, ibid. 578. So in *Gaty et al.* v. *Pitman*, 11 Ill. R. 21, and *Kennedy et al.* v. *Northrup et al.*, 15 ibid. 152. Upon full consideration of the statute, we are of opinion that its true meaning will allow the first purchaser to sustain his rights, by being first

on file for record. Under this view of the statute, we must regard Atkinson as a purchaser with constructive notice, as well as his vendees, the Duffield mining company. The fifth and remaining question, therefore, becomes unimportant, as it was raised by the defendant here, questioning their purchase, because the consideration was partly paid after notice, and partly yet unpaid. The question is one of importance, and we think proper to waive the consideration and examination of it for the present case.

*Decree affirmed.*