# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

CHARLES L. WILLOUGHBY et al.

v.

HENRY C. LAWRENCE et al.

*Filed at Ottawa January 25, 1886.*

1. CONTRACT—*for the use of fences and buildings for posting advertisements—of the rights acquired thereby.* A contract made by the lessees of a tract of land used for a trotting park or race course, giving the other party thereto the right to use the fences and all the buildings erected or to be erected upon the tract, except the club house, for advertising purposes, for a period of years, confers the right to use the inside as well as the outside of the main fence and the buildings inside the inclosure, except the club house.

2. The right to so make use of the fences and buildings, involves and includes the right of entry upon the premises to reach the buildings and the inner surface of the fence, and such latter right, if not an easement, is a burden or servitude in the nature of an easement.

3. And the right of ingress and egress so conferred is more than a mere revocable license. Such right amounts to an interest in the premises in the nature of a right of way in gross, which a court of equity will regard as, at least, an equitable charge or burden thereon in favor of the grantee.

4. EASEMENT—*whether appurtenant or in gross.* A right in the land of another, without its being appurtenant to or exercised in connection with the occupancy of the land, is an easement in gross. In such case the burden rests upon the land in favor of the person entitled thereto.

| | |
|---|---|
| 116 | 11 |
| 129 | 333 |
| 116 | 11 |
| 34a | 167 |
| 116 | 11 |
| 138 | 499 |
| 38a | 495 |
| 116 | 11 |
| 143 | 379 |
| 116 | 11 |
| 50a | 294 |
| 116 | 11 |
| 58a | 265 |
| 116 | 11 |
| 174 | 624 |
| 116 | 11 |
| 86a | 111 |
| 116 | 11 |
| 187 | 6380 |
| 116 | 11 |
| 194 | 5504 |
| 194 | 6505 |
| 116 | 11 |
| 203 | 8405 |
| 206 | 538 |
| e109a | 3594 |

5.  PURCHASER—*subject to a servitude—notice.*   To bind a purchaser of a servient estate by a servitude charged thereon, he should have notice thereof, as in case of other incumbrances upon land.

6.  RECORDING LAW—*as applicable to a contract creating a servitude upon land—as, granting the use of fences, etc., for advertising.*   A written contract granting or giving the right to use the fences and buildings upon a tract of land for advertising purposes, as, for posting advertising notices thereon, involving by implication a right of way upon the land to enjoy such use, is an instrument in writing relating to land, or relating to a chattel real if the grantor has but a leasehold interest, and as such, when recorded in the proper office, is notice to subsequent purchasers and creditors of the rights thereby conferred.

7.  LEASE—*clause forbidding sub-letting—who may avail thereof.*   The lessee of premises can not take advantage of a clause in his lease prohibiting the sub-letting of a part thereof, or assigning any less portion of the leasehold interest than the whole, to avoid a contract made by him with another, giving him a right to enter the premises and post advertising notices on the buildings and fences.   If the lessor does not avoid the contract, it will bind the lessee.

8.  CHANCERY—*protecting one in the enjoyment of a servitude upon land.*  If the owner of land enters into a covenant concerning the land or its use, subjecting it to easements or personal servitudes, and the like, and afterward sells the premises to one having notice of the covenant, the grantee will take them bound by the covenant, and will be compelled, in equity, either to specifically execute it or will be restrained from violating it, whether the covenant is or is not one which in law runs with the land.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Messrs. DENT, BLACK & CRATTY BROS., for the appellants:

The agreement of July 11, 1878, was an instrument "relating to or affecting title" to the fence and the buildings constituting part of the real estate, and was therefore entitled to record, (Rev. Stat. 1874, chap. 30, sec. 28; Washburn on Easements, *4,) and the recording of the same was notice to the Jockey and Trotting Club.

The agreement is proper to be enforced.   It secured valuable privileges to the complainants, for which they rendered a fair compensation.   *Hill* v. *Sherey*, 42 Vt. 614; *Johnstown C. M. Co.* v. *Veghte*, 69 N. Y. 16.

Injunction is the proper remedy to prevent interference with the rights acquired. High on Injunctions, secs. 1135, 1152, 1153, 1154, 1157; *Manufacturing Co.* v. *Stock Yard Co.* 8 C. E. Green, 161; *Kirkpatrick* v. *Peshine,* 9 id. 206; *Haskell* v. *Wright,* 8 id. 389; *Lattimer* v. *Livermore,* 72 N. Y. 174.

Even though the covenant be not regarded as running with the land, equity may still enjoin its violation by a subsequent grantee with notice, although no action at law could be maintained against him. *Kirkpatrick* v. *Peshine,* 9 C. E. Green, 206; *Tulk* v. *Moxhay,* 2 Ph. 774; S. C. 11; Beav. 571.

Messrs. Dow & BURNHAM, for the appellees:

The contract does not create an easement proper. If it creates any, it is one *in gross,* or, as sometimes called, a personal easement, and is not inheritable. Washburn on Easements, 10.

If this right is not a hereditament, it does not come within the purview of the Recording law. Rev. Stat. chap. 30, secs. 28, 38.

The privilege of using the surface of a certain fence and buildings for advertising purposes, is no interest in real estate. It is a mere license, and executory, which may be revoked at any time.

Payment for the license is no ground for aid in equity. It simply gives the licensee a right of action against the licenser for a breach of contract. 1 Washburn on Real Prop. 148.

A license is irrevocable only when coupled with a grant of an interest in the subject matter upon which the license is exercised. *Woodward* v. *Seeley,* 11 Ill. 164; *Jackson* v. *Babcock,* 4 Johns. 417; *Wood* v. *Leadbetter,* 13 M. & W. 838.

Even when there is a valid and subsisting legal contract, it is a matter resting in the sound discretion of the court whether it will decree a specific performance. *Alexander* v. *Hoffman,* 70 Ill. 114; *Hoyt* v. *Tuxbury,* id. 331.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On May 1, 1878, Magie & Tree executed to Lawrence & Martin a lease of the west half of the north-west quarter of section 14, town 39, north of range 13, east, in Cook county, for ten years from its date, with the privilege, on the part of the lessees, of terminating the lease at the end of five years, upon giving three months' written notice to the lessors. The lessees therein agreed not to sub-let any portions of the land or to assign any less portion of the leasehold interest than the whole, and not to permit the erection thereon of any buildings, except those necessary or convenient in the use and management of a trotting park or race course, and not to use said premises for any other purpose than a trotting park or race course, and the holding of fairs, and other exhibitions of a like character. On July 11, 1878, Lawrence & Martin made with Willoughby, Hill & Co. the following contract:

"Articles of agreement entered into this 11th day of July, A. D. 1878, by and between Lawrence & Martin, of the city of Chicago and State of Illinois, party of the first part, and Willoughby, Hill & Co., of the same city and State, party of the second part.

"Witnesseth, that for the consideration hereinafter mentioned, the party of the first part has sold and conveyed, and by these presents does sell and convey, all of the right and title to use the following described property for advertising purposes, to-wit, the fences and all the buildings to be erected upon the following described land (excepting the building to be called the club house, which building is not to be used for advertising purposes save by the party of the first part only,) to-wit, the west half of the north-west quarter in section 14, town 39 north, range 13, in the county of Cook, and State of Illinois. It is further agreed by the parties hereto, that the party of the second part shall have the sole and exclusive control of

said fences and buildings (with the exception above stated) for advertising purposes, and, under their exclusive control, to use all of the surface of said fences and buildings to advertise thereon, for themselves or any other person, and to sell and dispose of any or all of said surface for the purposes aforesaid. That said right to so advertise shall continue until the first day of May, 1883, and as much longer as the party of the first part or their assigns shall occupy said tract of land. It is further agreed that the privilege to advertise any business, profession or occupation in and about the premises aforesaid shall be the property of and belong to the party of the second part exclusively, and that the party of the first part shall not permit any other person to advertise in or about said premises without the consent of the party of the second part. For and in consideration of the premises, privileges and appurtenances aforesaid, and in consideration of one dollar in hand paid to them, the party of the second part hereby agrees to furnish the material for and erect a fence around so much of the aforesaid tract of land as lies east of Crawford avenue. The said party of the second part agrees to build said fence of good, merchantable, common lumber, tight, and ten feet high, and to maintain the same in good condition during the continuation of this contract. It is further agreed by the party of the first part, that after the completion of said fence they will pay to the said party of the second part the sum of $400 on demand, as a part of the expense of building said fence. It is further agreed by the parties hereto, that in case the said party of the first part or their assigns shall cease to occupy said land after the first of May, 1883, the party of the second part may remove said fence as their own property; but if this contract, with its privileges to the party of the second part, shall continue for the space of ten years, from the first day of May, 1878, then said fence shall become the property of the party of the first part. It is further agreed by the parties hereto, that the

terms of this contract shall be binding upon the executors, administrators, heirs and assigns of each of the parties severally hereto.

"Witness the hands and seals of the said parties, on the day and year above written.

LAWRENCE & MARTIN,      [seal.]<br>WILLOUGHBY, HILL & Co.  [seal.] "

In pursuance of this contract, the appellants, Willoughby & Hill, began the construction of the fence on the 27th day of July, 1878, and finished it in about three weeks. It cost them $2700, of which Lawrence & Martin paid them only $400, leaving $2300 of the actual cost unpaid, and for the expenditure of which they would receive no return except from the exercise of the advertising privileges conferred by the contract.

On August 20, 1878, about the time the fence was finished, and while it was yet under the control of Willoughby & Hill, proceedings were begun for the organization of the "Chicago Jockey and Trotting Club," under the 32d chapter of the Revised Statutes, in reference to corporations for pecuniary profit. The preliminary statement, required by the act, was acknowledged on August 20, 1878, and filed in the office of the Secretary of State on August 21, 1878. On September 6, 1878, the subscribers to the stock met, in pursuance of ten days' previous notice, and elected directors. The certificate of organization was issued on the 9th day of September, 1878, and recorded in the recorder's office of Cook county on September 20, 1878. The capital stock was $75,000, divided into 750 shares, of which ten gentlemen took each one share, making $1000, and Lawrence & Martin subscribed for 740 shares, amounting to $74,000. The Corporation act provides that upon recording the certificate of organization, together with the copies thereto attached, the "corporation shall be deemed fully organized, and may proceed to business," yet

on the 16th day of September, 1878, four days before the recording of the certificate, Lawrence & Martin assigned all their interest in the lease with Magie & Tree to the Chicago Jockey and Trotting Club. The following indorsement appears on the lease introduced in evidence:

"In consideration that we have sold to the Chicago Jockey and Trotting Club, for the sum of $75,000, our new race course, described as follows: Situated in the city of Chicago, county of Cook, and State of Illinois, and lying south of Madison street, west of Central Park, north of Harrison street, and east of Crawford avenue, with all the improvements thereon, and this lease, we, Henry C. Lawrence and Morris T. Martin, within named lessees, do hereby transfer, assign, set over and deliver to the said Chicago Jockey and Trotting Club all our right, title and interest in and to the above lease, subject to the agreements and covenants therein contained.

"Witness our hands and seals this 16th day of September, A. D. 1878.

H. C. LAWRENCE, [seal.]

M. T. MARTIN.   [seal.] "

Lawrence & Martin paid the $400 to appellants after they had received their stock.

When the club went into possession of the premises it refused to allow the appellants to exercise all the advertising privileges provided for in the contract. The testimony shows that for a considerable length of time their advertisements were allowed upon the outer surface of the outside fence, but neither the jockey club nor any of their assigns would permit such advertisements to be placed on the inner side of the main fence, or upon any of the buildings or fences inside of the enclosure. Accordingly, in March, 1879, the appellants filed a bill against Lawrence & Martin, and the jockey club, and its president, secretary and directors, praying for an injunction against any interference with the use of the premises for the purposes named in the contract, and for an allowance

of damages sustained, etc. Pending the original bill, and under a judgment against the club in favor of Henry V. Bemis, the sheriff, on October 27, 1880, sold to A. W. Richmond, for $29,500, subject to redemption, the leasehold interest of the club in said premises, "and all improvements, fixtures and appurtenances thereto belonging, meaning all buildings, fences, stables, club houses, stands, gates, sheds," etc., and issued to Richmond the usual sheriff's certificate of sale. On October 29, 1880, proceedings were taken, under the Corporation act, for the organization of a new corporation, called the "Chicago Driving Park," of which the certificate of organization was issued on December 9, 1880, and recorded on December 16, 1880. On December 11, 1880, the sheriff's certificate was assigned by Richmond to the "Chicago Driving Park," and a sheriff's deed was issued to it on April 6, 1882. On December 11, 1880, Bemis and Richmond also executed to the driving park a bill of sale of said leasehold interest, improvements, buildings, fences, sheds, etc., and of certain personal property on the premises. March 13, 1882, appellants filed their amended and supplemental bill, setting up substantially the above facts, and that the driving park refused to allow them to use the fences and buildings for advertising purposes, and alleging the insolvency of Lawrence and Martin and the jockey club, and the questionable solvency of the driving park, charging notice of their rights against the latter by *lis pendens*, and praying for a decree declaring themselves to be the owners of the privileges named in said contract, and for an injunction, as in original bill, and for an accounting of the value of the use of said premises while withheld from them, and making the same parties defendant, as in original bill, with the addition thereto of the "Chicago Driving Park."

The first question is as to the nature of the interest acquired by appellants under their contract. It gave them and their heirs, representatives and assigns, the right to use all of the

surfaces of the fences and buildings (except the club house) for advertising purposes, for a period of nearly five years, or ten years, if Lawrence & Martin, or their assigns, should occupy the premises so long. "All of the surface of said fences" included the inside as well as the outside of the main fence. The buildings were inside of the enclosure. Therefore the right to use the fences and buildings for the purpose of posting advertising notices upon them, involved and included the right of entry upon the premises to reach the buildings and the inner surface of the fence. The privileges accorded involved and implied a right of way upon the land to the inside of the fence and to the surface of the buildings. Such a right, if not actually an easement, was a burden or servitude in the nature of an easement.

The general rule is, that two distinct tenements are necessary to the creation of an easement,—the dominant, to which the right belongs, and the servient, upon which the obligation rests,—as, if the owner of one farm has a right of way over the adjoining farm, that in favor of which the right is exercised is the dominant tenement, that over which it is exercised is the servient tenement. (Washburn on Easements and Servitudes, p. 3, *et seq.; Garrison* v. *Rudd,* 19 Ill. 558.) In easements of this character the burden rests upon one piece of land in favor of another piece of land. But there is a class of rights which one may have in another's land without their being exercised in connection with the occupancy of other lands, and therefore called rights in gross. (Washburn on Easements, 4.) In such cases the burden rests upon one piece of land in favor of a person or individual. The principal distinction between an easement and a right of way in gross is found in the fact that in the first there is, and in the second there is not, a dominant tenement. The right of way is in gross, and personal to the grantee, because it is not appurtenant to other premises. The owner of premises may grant the right of way in either form. (*Wagner* v. *Hannah,*

38 Cal. 111.)   There is, moreover, a kind of appendancy or appurtenancy of one easement to or upon another easement, in some cases, which is sometimes called a secondary easement.   It passes with the principal easement, as being necessary or convenient to the enjoyment of the same.   The grant of a right of pasturage carries the right of way to and from the pasture.   So, that of drawing water, or of fishing, or hunting, gives a right of access and egress to and from the estate in which it is to be enjoyed.   (Washburn on Easements, p. 39; *Alexander* v. *Tolleston Club,* 110 Ill. 65.)   In the case at bar, a certain right of way, or right of access and egress to and from the trotting park, passed with the privileges of using the fences and buildings for advertising purposes; as being necessary and convenient to the enjoyment of such privileges.   The right conferred upon appellants by the contract was more than a mere revocable license, as claimed by appellees, because Willoughby & Hill actually constructed the fence at an expense to themselves of $2300, and fully executed their part of the agreement.   (Washburn on Easements, pp. 29, 30, *et seq.; Van Ohlen* v. *Van Ohlen,* 56 Ill. 528.)   They acquired, by the terms of their contract, a certain interest in these premises, which was in the nature of a right of way in gross, and which a court of equity will regard as at least an equitable charge or burden thereon in their favor.

The next question is, whether the Chicago Jockey and Trotting Club, immediate assignee from Lawrence & Martin, took the lease and improvements subject to this burden or freed from it.   In order to determine this question, it is necessary to determine whether the club had notice, actual or constructive, of the rights of appellants under the contract, or made its purchase under such circumstances as put it upon inquiry as to those rights.   To bind a purchaser of a servient estate by a servitude charged thereon, he should have notice thereof; as in case of other incumbrances upon land.   (Washburn on Easements, 42, note 2; *McCann* v. *Day,*

57 Ill. 101.) The contract was recorded on the second day of August, 1878. Was it an instrument of such a character that its record operated as notice to the club? The 31st section of the Conveyance act provides, that "deeds, mortgages, and other *instruments of writing relating to real estate,* shall be deemed, from the time of being filed for record, notice to subsequent purchasers and creditors, though not acknowledged or proven according to law." The 38th section of the same act provides, that "the term 'real estate,' as used in this act, shall be construed as co-extensive in meaning with 'lands, tenements and hereditaments,' and as embracing *all chattels real.*" The lease from Magie & Tree to Lawrence & Martin was a chattel real, and was entitled to record to give notice of the leasehold interest of the lessees therein. The contract in question, conveying the use for certain purposes of the fences and buildings upon land, which is particularly described, and involving a right of way upon the land in order to enjoy such use, is an instrument in writing relating to a chattel real. Under the 28th section of the Conveyance act it is an instrument *"relating to or affecting the title to* a chattel real." It imposes a charge or burden upon the leasehold interest of Lawrence & Martin, and designates an interest, which is carved out of that estate or included in it. We do not perceive why it is not embraced in the class of instruments whose record affects subsequent purchasers and creditors with notice. (*Reed* v. *Kemp,* 16 Ill. 445; *Dundy* v. *Chambers,* 23 id. 369; *McCann* v. *Day,* 57 id. 101; *Harris* v. *Johnson,* 31 N. J. Eq. 174.) The "Chicago Driving Park" is affected with notice of the rights of appellants, because it was a purchaser *pendente lite.*

It is claimed that the privilege accorded by Lawrence & Martin to appellants, to use the fences and buildings for advertising purposes, is a violation of the provisions in the lease from Magie & Tree, and that for this reason the enforcement of the agreement against the "Chicago Driving

Park" might lead to a forfeiture of the lease. That is a matter which concerns the lessors, and of which they alone can take advantage. If the contract is a violation of the terms of the lease, the lessors might yet choose to ratify it, or consent to such use of the premises as appellants claim. Such violation, if it exists, does not make the contract void, but only voidable. (*Webster* v. *Nicholls*, 104 Ill. 160.) The court of chancery had jurisdiction to restrain the defendants below from any interference with the exercise, by appellants, of their privileges under the contract. If the owner of land enters into a covenant concerning the land, concerning its use, subjecting it to easements or personal servitudes and the like, and the land is afterwards conveyed or sold to one who has actual or constructive notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled, in equity, either to specifically execute it, or will be restrained from violating it; and it makes no difference whatever, with respect to this liability in equity, whether the covenant is or is not one which, in law, "runs with the land." Pomeroy's Eq. Jur. secs. 689, 692, 1295, 1342.

The decree of the Superior Court, and the judgment of the Appellate Court affirming said decree, are reversed, and the cause is remanded to the Superior Court for further proceedings in accordance with this opinion.

*Judgment reversed.*

This case was originally assigned to Mr. Justice DICKEY. As no opinion was written by him before his death, the case was re-assigned at the November term, 1885.