Joel E. Bullard et al., Appellees, v. Arthur C. Turner et al., Defendants.
Appeal of Standard Chair Company, Appellant.

Gen. No. 35,725.

Opinion filed February 8, 1933.
Rehearing denied and opinion modified February 23, 1933.

HELMER, MOULTON, WHITMAN & HOLTON, for appellant; CHARLES R. HOLTON and HERBERT R. TEWS, of counsel.

FRANK E. HAYNER, GEORGE GILLETTE, ELMER M. LEESMAN and ALTHEIMER, MAYER, WOODS & SMITH, for appellees; JESSE L. COHEN, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

This cause comes to this court on appeal of defendant and cross complainant, Standard Chair Company, from a decree of the superior court of Cook county in favor of complainant against defendants in a proceeding to foreclose a mortgage given by defendant, Turner, to complainant on July 1, 1929, on industrial property in the City of Chicago. Prior to the execution of the mortgage by defendant Turner, on the property involved, Turner had made a lease of a portion of the premises to one of the defendants, the Brockton Heel Company, for a term of 10 years, and after the making of such lease, and prior to the execution of the mortgage, Turner had assigned to defendant and cross complainant Standard Chair Company, a Pennsylvania corporation, the lease to the Brockton Heel Company, together with the rents to be derived thereunder. The assignment was not recorded. A receiver for the property was appointed in this proceeding, and thereafter a petition was filed by the receiver in which the receiver prayed that the tenant, Brockton Heel Company, be required to attorn and pay rent to the receiver. The Brockton Heel Company filed an answer to the bill and an answer to the

petition in each of which is set forth the alleged facts concerning the assignment of the lease and rentals thereunder to defendant, Standard Chair Company.

In the order appointing the receiver, the court found that by the trust deed, a copy of which is attached to the bill of complaint and described therein, the defendant, Turner, had conveyed to complainant all rents, issues and profits of the premises described in the trust deed, and an examination of the trust deed shows such to be the fact. The court also found that it is provided in the trust deed that upon the filing of a bill to foreclose, a receiver should be appointed to take and receive the rents, issues and profits of the premises described. Upon the bill of complaint, petition and the answers of the Brockton Heel Company, the court ordered a reference to a master who found and reported that the court had jurisdiction, and that after considering the facts concerning the assignment of the rents, he, the master, concluded that the receiver is entitled to an attornment by the Brockton Heel Company, and that such receiver is entitled to the rents of the premises occupied by the Brockton Heel Company commencing October 1, 1930, and that the court enter an order in accordance therewith.

Upon a hearing following the report of the master, the court entered an order approving the report, and ordered the Brockton Heel Company to attorn and pay the rents to the receiver. Thereafter, the defendant, Standard Chair Company, filed its answer and a cross-bill in which it set forth its right to the rents under the assignment of the lease and rentals to it by Turner, to which cross-bill an answer was filed by complainant, asserting his right to the rents of the premises under the terms of the trust deed. A reference was had to a master, other than the master who made the first report, upon the cross-bill, answers and replication with direction to take testimony and report his findings.

By witnesses testifying on the hearings, it is shown that the Brockton Heel Company entered into possession of a portion of the mortgaged premises prior to July 1, 1929, the date of the making of the mortgage sought to be foreclosed in the instant case, and had been in continuous possession of such portion since that time; that prior to August 1, 1927, the Brockton Heel Company had paid its rent to the defendant, A. C. Turner, and that after the last mentioned date it had paid the rents for the premises occupied by it to the Standard Chair Company of Union City, Pennsylvania, upon the direction of the defendant, Turner; that the Brockton Heel Company had entered into possession as a tenant of Turner under and by virtue of a lease from him, and that Turner occupied the portion of the mortgaged premises not leased to and occupied by the Brockton Heel Company. It is also shown that signs indicated clearly the portions of the premises occupied respectively by the Brockton Heel Company and by Turner.

The defendant, Turner, testified that at the time he procured the loan from complainant and executed the notes, he had not advised the complainant, nor any one for him, of the assignment by him of the lease and rentals to the Standard Chair Company. Bullard, the complainant, testified that at the time he made the loan and accepted the mortgage from Turner, he was not and had not been advised by any one that the lease and rentals had been assigned,.as alleged in the cross-bill. Thereafter the last designated master filed his report recommending that a decree of foreclosure be entered in favor of complainant; that the cross-bill of defendant, Standard Chair Company, be dismissed for want of equity, and found the assignment of the rentals to the Standard Chair Company to be subordinate and inferior to the lien of complainant's trust deed and the assignment of the rents there-

under to the complainant. Exceptions to the report were heard by the court, overruled, and a decree entered approving and confirming the report, from which decree this appeal is prayed.

Two main points are urged by appellant as alleged grounds for reversal. First, that the appointment of the receiver was improper under the allegations in the bill, and the circumstances surrounding the appointment; second, that the complainant took the mortgage on the property involved subject to the assignment of the lease thereon with the rentals thereunder, to the Standard Chair Company of Pennsylvania, although the assignment of the lease and rents was not recorded, and it is not shown but denied that the mortgagee, complainant, had any notice thereof. It seems to be agreed by both complainant and defendant (appellant), the Standard Chair Company, that complainant's mortgage was taken subject to all the rights of the Brockton Heel Company, the tenant of Turner, so the question to be determined is whether or not the mortgagee was put upon inquiry as to whether or not the mortgagor had assigned the lease and the rents thereunder to the Standard Chair Company prior to making the mortgage sought to be foreclosed in this suit, in spite of the fact that the assignment of the lease and the rents thereunder had not been recorded.

In *Willoughby v. Lawrence,* 116 Ill. 11, our Supreme Court holds that a lease of the character of the one involved is a chattel real, and as such should be recorded in order to give notice of a leasehold interest in an estate. To the same effect is the case of *Vombrack v. Wavra,* 331 Ill. 508, page 512, in which the court says:

"The public records of conveyances and instruments affecting the title to real estate are established by statute to furnish evidence of such title, and a purchaser may rely upon such records in security un-

less he has notice, or is chargeable in some way with notice, of some title, conveyance or claim inconsistent therewith." See also *Lennartz v. Quilty,* 191 Ill. 174; *Holbrook v. Dickenson,* 56 Ill. 497.

Appellee insists that the rule is that unless the purchaser (in the instant case the mortgagee) had actual notice of the assignment of the lease in question and the rents and profits arising therefrom, the assignment not having been recorded, he had the legal right to assume that no such instrument existed.

In the case of *Willoughby v. Lawrence, supra,* a lease had been made by Magie & Tree to Lawrence & Martin of a tract of land in Chicago to be used as race track property. Subsequently, the lessees made a contract with Willoughby & Hill by which they sold and conveyed to Willoughby & Hill the right to the use of the fences and buildings to be erected on the demised land for advertising purposes. This contract was recorded. Thereafter, the lessees conveyed their interest under the lease to a corporation, the Chicago Jockey and Trotting Club, which corporation refused to allow the use of the premises by Willoughby & Hill as provided by the contract made between Willoughby & Hill and the lessees of the premises. A bill was filed by Willoughby & Hill, seeking to enjoin the assignees of the lease from interfering with their use of the property under their contract with the lessee. In passing upon the question as to whether or not the assignment of the lease was an instrument to be recorded as contemplated by the Conveyance Act, Cahill's St. ch. 30, and whether the recording of such an instrument is notice to a purchaser, the Supreme Court said, page 21:

"Was it an instrument of such a character that its record operated as notice to the club? The 31st section of the Conveyance Act provides, that 'deeds, mortgages and other *instruments of writing relating*

*to real estate,* shall be deemed, from the time of being filed for record, notice to subsequent purchasers and creditors, though not acknowledged or proven according to law.' The 38th section of the same act provides, that 'the term "real estate," as used in this act, shall be construed as co-extensive in meaning with "lands, tenements and hereditaments," and as embracing *all chattels real.'* The lease from Magie & Tree to Lawrence & Martin was a chattel real, and was entitled to record to give notice of the leasehold interest of the lessees therein. The contract in question, conveying the use for certain purposes of the fences and buildings upon land, which is particularly described, and involving a right of way upon the land in order to enjoy such use, is an instrument in writing relating to a chattel real. Under the 28th section of the Conveyance Act it is an instrument *'relating to or affecting the title to* a chattel real.' It imposes a charge or burden upon the leasehold interest of Lawrence & Martin, and designates an interest, which is carved out of that estate or included in it. We do not perceive why it is not embraced in the class of instruments whose record affects subsequent purchasers and creditors with notice. (*Reed v. Kemp,* 16 Ill. 445; *Dundy v. Chambers,* 23 id. 369; *McCann v. Day,* 57 id. 101; *Harris v. Johnson,* 31 N. J. Eq. 174.)''

Counsel for appellant cite the case of *Smith v. Heirs of Jackson,* 76 Ill. 254, as authority for the proposition that even though the assignment of the lease and rents was not recorded, still the complainant in the instant case must not only have taken notice of the tenant in possession, but also the person to whom the tenant paid the rent. In the case cited last, one Jackson had been indicted for a criminal offense, and in order to procure bail, had conveyed his farm as security to his attorney, one Hackney, who went his bail. The attorney delivered to Jackson an agreement to reconvey,

which was not recorded. The criminal proceedings against Jackson were dismissed, but his attorney, in the meantime, had recorded the deed, conveyed the land to a third person named Smith and had absconded. At the time Jackson conveyed his land to his attorney, his (Jackson's) tenant was in possession of the land, and this tenant remained in possession and continued to pay rent to Jackson. Jackson died and a bill was filed by his heirs, seeking to have the conveyance set aside. In passing upon the question of the *bona fides* of the transaction, the court said, page 258:

"It is the tendency, and properly. so, of the American courts, under the policy of our recording acts, not to extend the doctrine of constructive notice from possession beyond its proper limits. The doctrine itself is firmly established, and yet not favored. There is nothing unreasonable in a rule which requires a purchaser of land in the open, visible and exclusive possession of a person other than his vendor, to make inquiry as to that person's rights, and to take subject to those rights if he neglects to do so. It has been the rule of all the courts, so far as we are aware, that, in case of a tenancy, the possession of the tenant would amount to constructive notice to a purchaser of such tenant's title. The divergence of authority has been upon the question whether notice of a tenancy would affect the purchaser with constructive notice of the lessor's title, and that question is involved in this case. Jackson was not in the actual occupation of the premises, but in possession by others, and known to be in the receipt of rents from the persons in actual occupation. This latter is an important circumstance, for, while it might not be an unusual circumstance for a vendor to remain in possession, after conveyance, as a mere tenant at sufferance of his grantee, yet it is an unusual circumstance for him to not only remain in

possession but to be in the receipt of rents, after conveyance, as in this case.

"It is true, this fact was not known to Smith, but he, according to his own testimony, purchased without even going or employing an agent to see the land, or make inquiry of the persons in occupation. Had inquiry been made, the fact would readily have been ascertained that they were paying rents to Jackson. The counsel who appear for him in this court were his legal advisers, he says, and to whom he presented the abstract for examination. It is not likely that counsel of such eminence would have failed to advise him of the necessity of inquiry whether there was any tenancy by others; for the law had been laid down by this court, as early as the case of *Pittman v. Gaty,* 5 Gilm. 186, that possession by the tenant was the possession of the landlord, and constructive notice of the landlord's title. That is the settled law in Pennsylvania, also in Iowa. See *Dickey v. Lyon,* 19 Iowa 544, where the principal cases upon both views of the question are collected and ably commented upon.

"In *Barnhart v. Greenshields,* 9 Moore, P. C. 18, referred to in the Iowa case, it was held that, in all the cases, the possession relied upon was the *actual occupation* of the land, and that the equity sought to be enforced was on behalf of the party so in occupation; and it was further said, there was no authority for the proposition that notice of a tenancy is notice of the title of the lessor, or that a purchaser, neglecting to inquire into the title of the occupier, is affected by any other equities than those which such occupier may insist on. *This doctrine has since been modified in its application, and it has been laid down that the court, in the passages of that judgment in which they speak of the person in occupation, did not mean merely the person who, by himself or his laborers, tilled the land, but also meant the person who is known to re-*

*ceive the rents from the persons in occupation of the land.* 2 Sug. on Vend. & P. 8 Am. Ed. 774, 775; *Knight v. Bowyer,* 23 Beav. 609; 2 DeG. & J. 421.

"Smith lived in Springfield, the distance of only a few miles from the county seat of Logan county, where the land is situated, accessible by railroad. It is a singular and suspicious circumstance that he purchased without ever having seen the land, or made, or caused to be made, any inquiry of the persons in occupation in respect to their or their lessor's title. Common experience teaches us that, unless the purchase is a mere sham, men do not conduct in that way. What man of common prudence would pay $3,500 cash for a quarter section of land so easy of access, without any view of the property or inquiry as to possession? Under these circumstances, the proof of payment of the consideration is not satisfactory. It was done by merely producing drafts with Hackney's indorsement upon them. Smith was on the stand and could have shown, if such was the truth, that Hackney received and retained the proceeds of these drafts. He did not do it, nor did he testify that he, in fact, had no notice of Jackson's equities.

*"The court are of opinion that he was clearly affected with constructive notice of those equities, if he did not have actual notice."* The doctrine in this case has been followed in *Gallagher v. Northrup,* 215 Ill. 563; *Macaulay v. Dorian,* 317 Ill. 126, and in many other Illinois cases.

No rights of the tenant are involved in this proceeding. The mortgagee, of course, was bound to and did take notice of the tenant's possession, right and title. In so far as the controversy between the complainant and cross complainant is concerned, we believe the equities to be with the complainant. It would have been a very simple matter for the cross complainant to have recorded its assignment of the lease and rents,

and then all trouble would have been avoided. When the mortgagee examined his abstract, he found nothing to indicate that the mortgagor had parted with any portion of his estate in the land mortgaged, except a prior mortgage to which his lien is subject. It seems to us that the very purpose of the act providing for the recording of such documents is that notice be had of the status of land titles. However, in view of the holdings of the Supreme Court that a purchaser of land must take notice of the person to whom a tenant in possession pays rent, we feel that we have no discretion in the matter. This court is therefore of the opinion that Standard Chair Company is entitled to the rents of the mortgaged premises under the terms of and as provided by the assignments in evidence. The decree of the superior court is reversed and the cause remanded with the direction that a decree be entered in conformity with the terms expressed in this opinion.

*Reversed and remanded with directions.*

HEBEL, J., concurs.

WILSON, P. J., specially concurring.

MR. PRESIDING JUSTICE WILSON specially concurring: I concur in the foregoing opinion in view of the fact that it seems to enunciate the rule in this State, but I have been unable to concur in the reasons stated by the cases in this State in arriving at this conclusion.

Turner made a 10-year lease of part of the premises to the Brockton Heel Company. While the lease had still over five years to run, Turner assigned the lease, together with the rentals, to the Standard Chair Company. Thereafter, and while it still had over five years to run and by reason thereof was an interest in the real estate, he executed a trust deed to the premises to Bullard but did not tell him of the assignment of the lease. Bullard filed his bill to foreclose and asked for a receiver to collect the rents. The Stand-

ard Chair Company entered its appearance and claimed the rentals under the lease. This lease was never recorded.

In the cases cited from the Supreme Court of this State and followed in the main opinion, the reason for the rule is enunciated that Bullard could have ascertained the fact by inquiry from the tenant. In my opinion, the rule that a person taking a mortgage or trust deed on premises does so subject to the right of tenants in possession, does not extend to the rights of an assignee of the tenant's lease. The rights of the tenants are in nowise changed by the assignment of his lease by his landlord. The change made by such assignment is a change of the person to whom he pays rent. He is not concerned with the payment of rentals nor is he interested in the fact that by the assignment he is required to pay the rentals to some other person other than to the landlord from whom he originally leased. His rights in the premises remain exactly the same, and he is protected by his lease. If he should be inquired of by a prospective mortgagee or trustee he might conceal the fact that he paid rent to another, other than his landlord. The rule under the decisions, however, would remain the same, as the assignee could not be bound by misrepresentations by the tenant. On the other hand, the recording of the assignment of the lease would protect all parties and be notice to the world.