THE ROCK ISLAND AND PEORIA RAILWAY COMPANY

*v.*

LAERTES F. DIMICK.

*Filed at Ottawa, October 31, 1892.*

1. SPECIFIC PERFORMANCE — *proof and clearness of the contract.* To entitle a party to specific performance, the contract must be clearly proved and be certain and unambiguous in all its parts and terms.

2. INJUNCTION — *jurisdiction of a court of equity to protect party's rights.* Where a party granted a right of way over his land to a railway company, taking back an agreement in writing to perpetually maintain certain openings under the road as passage-ways for stock, and a

successor of the company, through a judicial sale, was about to close such passage-ways, it was *held*, that a court of equity had jurisdiction to protect the land owner in the enjoyment of his rights under his contract by enjoining the closing up of such openings or passage-ways.

3. Contract — *for passage-ways under railroad — its certainty.* When at the time of the execution of a deed granting a railway company a right of way across the grantor's farm, and the execution by the company of an agreement to make and maintain two passage-ways under its road, the road was graded and built, leaving open two such passage-ways, it will be presumed that the contract relates to the ways then existing, and such contract will be as capable of being enforced as if the size, nature and location of the passage-ways had been definitely inserted in the contract.

4. Possession — *notice of possessor's rights.* The open and exclusive possession of lands under an apparent claim of ownership, is notice to those subsequently dealing with the title, of whatever interest the possessor has in the premises, whether the interest be legal or equitable in its nature. And if the grantor of land remains in possession after conveyance, purchasers from the grantee will be affected with notice of the grantor's rights in the land.

5. Same — *as notice of an easement reserved.* The doctrine that the tenant in possession will not be permitted to assert a claim inconsistent with his recorded deed, does not apply to the reservation of an easement or right of way or passage in the land conveyed, where the grantor retains title to adjacent lands, and the easement or right of way is appurtenant to the adjacent premises, the title to which remains in the grantor.

6. Notice — *by facts sufficient to put purchaser on inquiry.* If the facts and circumstances apparent are sufficient to put a purchaser of land on inquiry, he will be chargeable with notice of all that such inquiry would have shown.

7. Same — *of existence of a right of way or easement by user.* Ordinarily, where an easement or right of way only is claimed, in the very nature of the right, the use or occupation of the land will be intermittent, and, strictly speaking, not capable of that continuous possession of which lands are ordinarily susceptible. In such cases, notice is necessarily afforded, if at all, by the continued and uninterrupted user, which is analogous to, and in a sense, possession.

8. A land owner granted to a railway company a right of way across his farm, and retained the title to the land on each side of the right of way, and he afterward, under an unrecorded contract with the company, used two openings under the road as passage-ways to and from the several parts of his farm, and built his fences so as to leave such ways open for use: *Held*, that his user of such ways and fencing with a view to their use, was notice to a subsequent purchaser of the railroad of the possessor's rights.

Appeal from the Circuit Court of Henry county; the Hon. John J. Glenn, Judge, presiding.

This was a bill by the appellee in the Circuit Court of Henry county against appellant, to enjoin the closing of two cattle-ways under appellant's railroad, upon appellee's farm.

Appellee being the owner of an eighty-acre tract of land and fifty-seven-acre tract adjoining, July 20, 1870, made a deed to the Peoria and Rock Island Railroad Company, conveying a right of way for its road across the eighty-acre tract, for the expressed consideration of $300, which was recorded. It is alleged in the bill, the real consideration for said deed was $300 in money and the written agreement of the grantee to forever maintain and keep open, at its own expense, two passage-ways for stock under its road through appellee's farm. The railroad embankment was built across appellee's land, and the two ways under it left open before the deed was executed. The road cut the farm triangularly, leaving a considerable portion on either side of it. The contract was not recorded, and before bill filed, had been destroyed by fire. Appellant acquired title to the railroad under foreclosure of mortgage executed by the Peoria and Rock Island Railroad Company in October, 1877, went into possession and has since operated it. Both passage-ways were left open, without interference therewith, except as hereinafter stated, until about the time of filing the bill, when appellant was about to fill in and close the south passage-way. In 1889 (June 29), appellant then having operated the road over eleven years, asked permission of appellee to fill up part of the passage-way most northerly, and an agreement in writing was entered into, by which the right was granted to appellant to fill up all but eight feet thereof, which it covenanted to keep open and maintain, as a cattle-way for appellee, during the continued occupation, etc., of the road. In said agreement in writing last mentioned, it was alleged and shown that a mistake was made in the description of the

tract of land, and the bill prays, among other things, for its reformation.

The answer, admitting appellee's ownership of the land, the construction of the railway, the making of deed for right of way, denies the making of said first-mentioned agreement, and admits that when the railroad was first built, openings in its embankments were left, but denies they were so left by virtue of any contract with appellee; but, on the contrary, it is alleged, the embankments were so built that openings were left at sloughs and natural depressions, to allow the surface water to pass through under its track, in the usual manner to allow drainage, and for no other reason or cause whatever. Admits its corporate existence, and that it succeeded by purchase, etc., to all the rights, franchise and property of the Peoria and Rock Island Railroad Company, and avers that said purchase was made in good faith, and for value, without notice of the equities now set up by appellee, etc. Admits that it closed up, by consent of appellee, the north opening, except eight feet thereof, and is about to close up the southerly opening entirely, etc. Replication was filed, and on hearing, the injunction was made perpetual, and the railroad company appeals.

Mr. Henry Curtis, for the appellant:

The alleged contract of July 20, 1870, applied to the north opening only, and not to the south one.

The proof is not sufficient to establish the contents of the contract with requisite certainty. To entitle a party to specific performance the contract must be certain and unambiguous in all its terms and parts; the proof must be clear and certain, and especially so when the contract is lost. *Rector* v. *Rector*, 3 Gilm. 105 ; *Long* v. *Long*, 118 Ill. 638 ; *Hamilton* v. *Harvey*, 121 id. 471; *Padfield* v. *Padfield*, 92 id. 198; *Langston* v. *Bates*, 84 id. 524 ; *Worth* v. *Worth*, id. 442; *Car-*

*ver* v. *Loseter*, 36 id. 182; *Clark* v. *Clark*, 122 id. 388; *Brix* v. *Ott*, 101 id. 70.

Even if the contract was as claimed, yet the same is void for the reason that appellant, through Cable, purchased the railway in good faith for value, without knowledge or notice, express or constructive, of said unrecorded contract.

In order to charge a subsequent purchaser with constructive notice of a prior unrecorded conveyance or contract, or to put him upon inquiry concerning the same, such facts and circumstances must exist as to render their disregard by the purchaser willful and an act of bad faith and fraud against the prior purchaser. The proof of notice must be clear and positive. The purchaser is not bound to follow mere suspicions or possibilities. *Doyle* v. *Teas*, 4 Scam. 202, 243, 248–250; *McConnel* v. *Reed*, id. 123; *Rogers* v. *Wiley*, 14 Ill. 65; *Rupert* v. *Mark*, 15 id. 542; *Harper* v. *Ely*, 56 id. 194; *C., R. I. & P. R. R. Co.* v. *Kennedy*, 70 id. 361; *Grundes* v. *Reid*, 107 id. 311.

"Enough must be shown to impute to the subsequent purchaser bad faith, so as to taint his purchase with fraud in law." *Anthony* v. *Wheeler*, 130 Ill. 135.

"Such notice should always be clearly proved, and should be of such character that a disregard of it would be a fraud." *Pittman* v. *Sofley*, 64 Ill. 156–157; *Slattery* v. *Rafferty*, 93 id. 285.

A right of way or of passage, where its use is intermittent, is not, perhaps, the subject of possession, strictly speaking. Knowledge or notice of it must necessarily come in most part from its user, but this is analogous to possession, and, as to the latter, the rule is that, to afford notice, it must be open, visible and (according to its nature) exclusive. *Truesdale* v. *Ford*, 37 Ill. 220; *Smith* v. *Heirs of Jackson*, 76 id. 254; *Partridge* v. *Chapman*, 81 id. 137.

The contract of July 20, 1870, even if as claimed to be by appellee, should not, under the circumstances, be specifically enforced, but appellee left to his remedy for damages. *Louisville, E. & St. L. R. R. Co.* v. *Chalcraft*, 14 Ill. App. 516.

Rock Island & Peoria Ry. Co. *v.* Dimick.     633

Brief for the Appellee.     Opinion of the Court.

Mr. John P. Hand, for the appellee:

A court of equity will assume jurisdiction to prevent a deprivation of rights connected with real estate, as the rights to easements, without the allegation of facts showing the damages to be irreparable and that there is no adequate remedy at law. *McClann* v. *Day*, 57 Ill. 101; *Morrison* v. *King*, 62 id. 30; *McPherson* v. *Holdridge*, 24 id. 38; *Craig* v. *People*, 47 id. 487; *C. & E. Ry.* v. *Hay*, 119 id. 493; *Deene* v. *Cole*, 118 id. 165; High on Injunctions, secs. 886, 894, 895.

Mr. Justice Shope delivered the opinion of the Court:

In 1870, appellee executed his deed to the Peoria and Rock Island Railroad Company, conveying a right of way for its railroad across his lands, for the expressed consideration of $300. At the time of the execution of the deed, the railroad had been graded through appellee's land, and two openings left in the embankment for said road built on said land. The one designated the north passage-way was at a slough, and was fifty to sixty feet long, and which would be spanned with a bridge or trestle work. Practically a thousand feet south of that one was another opening, near the south line of appellee's land, ten or twelve feet wide, over which a bridge was to be constructed. It is alleged in the bill that, as part consideration for the conveyance of the right of way, the grantee agreed with appellee to keep open and perpetually maintain said two openings, under its track, as passage-ways for the passage of appellee's stock to and from his lands lying on each side of the right of way granted in and by said deed of conveyance. That said agreement was, cotemporaneously with the execution of the deed, reduced to writing and duly executed and delivered to appellee, but has since been destroyed, etc., without having been recorded. The answer denies these allegations and avers that the $300, admitted to have been paid, was the sole consideration for said deed.

No good purpose will be served by discussion of the evidence. It leaves no doubt whatever that an agreement in writing was executed for and on behalf of said railroad company and delivered to appellee, relating to the maintenance of a passage-way or passage-ways under the railroad track through appellee's farm, for the accommodation of the farm in the passage of stock from one side of the railroad to the other, or that such written agreement was made and delivered to appellee, cotemporaneously with and as part of the transaction of making and delivering the deed. This is abundantly shown by the testimony of Mr. Page, who was, at the time, a director and attorney of the railroad, and who wrote the agreement at Dimick's house, executed it and took, at the same time, the acknowledgment of the deed, as well as by that of Dimick and other witnesses. There is, however, some difficulty as to the terms of the written agreement, but not in respect of any matter affecting the substantial merits of this controversy. Mr. Page's recollection is, that the contract was to apply to one passage-way only, that is, that the railroad company was to maintain "a passage-way," not two passageways, but says, he is not certain, may be mistaken, and that appellee carefully read the contract in his presence, and would be fully as likely to remember the real facts. Appellee testifies, that the contract related to the maintenance of the two passage-ways then open through the railroad embankment on his farm, and the contract provided for their perpetual maintenance by the railroad company. But if the recollection of Mr. Page be conceded to be correct, it clearly appears from his testimony that the opening contracted for was the south opening, which is the principal subject of controversy in this case. He says (quoting from the abstract): "When the road was constructed there were two passage-ways left under the track through which stock could pass and repass. One, at what was called the slough, and the other farther south. The north passage was located in a slough. The south opening is the

principal opening contracted for. He was to have such an opening that stock could pass and repass at all times. The north opening would not answer at all times on account of the slough." He also says the construction of the south opening was as provided for in the contract. The testimony of Mr. Gould, another director of the railroad company, at the time, although relating largely to information derived by him from Mr. Page, in the course of the business of the construction etc., of the road, and in consultations between them during the negotiations for the right of way over appellee's land, is strongly corroborative of the contention of appellee. He says (again quoting from the abstract): "Had conversation with Dimick during the time I was surveying and grading the road. Dimick complained the road would interfere with his feeding lots; it was compromised by giving him a race-way or drive-way under the railroad at the first draw north of the public road. Dimick wanted some contract in writing, or put in the deed. Page and I consulted and came to the conclusion it ought to be done. Page reported to me he had got a deed for the right of way with that * * * agreement with Mr. Dimick. It was conceded there would be a bridge at the big slough, consequently an opening, with not much danger of being filled up. It was calculated that it would remain as a crossing, so Page and I didn't have much talk about that. * * * When road was graded the south crossing was left open for the passage of cattle." He says that Dimick was very much dissatisfied and the engineer suggested giving him a " passage-way under the road, that would not injure him in regard to his cattle, and he (Dimick) finally consented, with that understanding." The south crossing, as this witness terms it, is the passage-way under the track, which appellant now proposes to fill up, and is practically " at the first draw north of the public road." It is evident from the testimony of all these witnesses that the opening at the slough was not made by the railroad company, as a cattle-way for appellee, but because of

the nature of the ground, it was thought desirable and necessary to leave an opening in the embankment.    It is true that when there was not enough water in the slough to prevent, cattle could pass through, but, as said by Mr. Page, it would "not answer at all times on account of the slough." This is much strengthened by the testimony of the superintendent of appellant's road.    In 1889, under an agreement between the parties to this record, appellant filled in all but eight feet of the north opening, and appellee insisted that the railroad company agreed to put a pipe or tile in the eight-foot opening left, so as to make the way dry for the passage of stock.

The superintendent says he never agreed to do so, for, upon looking over the ground carefully, he saw the slough "drained a vast amount of territory, and decided that nothing less than a six-foot pipe would be safe in there." Without farther discussing the testimony in this regard, it may be said, that the conditions and circumstances shown, corroborate the contention of appellee that, while the north passage-way was by the agreement to be kept open for his use, he was to have the south opening maintained also, as a passage-way for stock. That the written agreement was made to conform to the understanding and agreement of the parties at the time, is shown by Page and appellee and controverted by no one.

It is said that these witnesses are discredited, in effect, by the fact that the south opening in the embankment was only of sufficient height to admit of the passage of hogs and sheep, when the road was first constructed, and only became high enough to permit other stock to pass, upon the roadbed being raised by appellant some years later.    This, if true, is by no means controlling.    It may be that the opening as originally made, if appellant's contention be accepted, was all that appellee required, or was sufficient, with the slough in condition so his cattle and horses could pass, to accommodate him in its use. But, while it is a circumstance proper to be considered, it can not have the effect of casting discredit upon the testimony of

at least two witnesses, who testify affirmatively to the fact, that the agreement was that said south opening was to be kept open and maintained as a passage-way for appellee's stock.

In 1889, appellant, desiring to better its roadbed by filling in the north opening, entered into a written contract with appellee, in which, by way of recital, it expressly recognized that appellee had an agreement in writing, entitling him to a passage-way for stock under that bridge, and it was then agreed "that all of said bridge may be filled up by the company, except a space eight feet in width, which space shall be kept open and free for a passage-way for live stock, for the benefit of said Dimick, his successors and assigns, for as long time as a railway is maintained and operated over and across said land." This related wholly to the north passage-way. The only consideration for its execution was the covenant of the railroad company to keep the eight feet opening in its embankment open and free for a passage-way for appellee's stock. He acquired no new right that had not before been granted him, but consented that the volume of water might be narrowed into an eight-foot channel. This is inconsistent with the conduct of appellee throughout, as shown by the evidence, unless he relied upon the right to the continued use of the south passage-way. Again, the fact that from 1870 no change was made in these openings, and that they were openly and notoriously used by appellee for the purposes of passage-ways for his stock, that when the railroad fenced its road, the fence was so built as to preserve the free passage through both, are circumstances strongly corroborating appellee. We think the finding of the court is fully sustained by the evidence.

It is insisted also that the contract is not established with the requisite certainty to entitle appellee to its enforcement as to the south passage-way. It is true, as said by counsel, that to entitle a party to specific performance, which is, in effect, the relief granted by the decree rendered, the contract must be clearly proved, and be certain and unambiguous

in all its parts and terms. *Rector* v. *Rector*, 3 Gilm. 105; *Long* v. *Long*, 118 Ill. 638; *Clark* v. *Clark*, 122 id. 388. We think it can not. be said that the contract as proved is either uncertain or ambiguous.    When it was finally reduced to writing and executed, the substructure of the railroad had, as we understand, been completed through appellee's farm. The two openings, and no other, had been made, or left, and all parties knew their size, character and location, and it was in respect of these openings, thus physically existing, that the parties contracted, as it is alleged and proved.    It was these then existing passage-ways through its embankment, that the railroad company was to keep and maintain as passage-ways for appellee's stock.    The south opening was left, as shown by a decided preponderance of the evidence, under an understanding, if a cattle-way was there provided and maintained, appellee would be satisfied and would convey the right of way ; and the north passage-way was left, as a necessity, or for the convenience of the railway company and could, ordinarily, likewise be used by appellee as a passage-way for his stock.    That the parties acted in conformity with the contract as thus shown, until appellant sought and obtained the right to fill in a part of the north passage-way in 1889, seems established by this record.    The contract as alleged and proved, therefore, is as certain and as capable of enforcement as if the size, nature and location of the passage-ways had been definitely inserted in the contract.    It is contended that the contract of July 20, 1870, under which appellee claims right to the south passage-way, if established, can not be enforced against appellant, for the reason that it, through Mr. Cable in 1877, purchased the railroad in good faith for value, and without notice of said contract, or of the rights claimed by appellee thereunder.

The law is well settled in this State, as generally elsewhere, when not changed by the recording acts, that open and exclusive possession of lands, under an apparent claim of ownership, is notice to those subsequently dealing with the title of what-

ever interest the possessor has in the premises, whether the interest be legal or equitable in its nature. Wade on Notice, sec. 273; *Davis* v. *Hopkins*, 15 Ill. 519; *Truesdale* v. *Ford*, 37 id. 210; *Smith* v. *Jackson's Heirs*, 76 id. 254; *Partridge* v. *Chapman*, 81 id. 137. It has been held also in this State, that if the grantor remains in possession after conveyance, purchasers from the grantee are affected with notice of the grantor's rights in the land. *White* v. *White*, 89 Ill. 460; *Ford* v *Marcall*, 107 id. 136. Nor does the doctrine, that the tenant in possession will not be permitted to assert a claim inconsistent with his recorded deed, (Wade on Notice, secs. 298-9; *Smith* v. *Jackson's Heirs*, *supra*), where otherwise applicable, apply to the reservation of an easement or right of way or passage in the land conveyed, where the grantor retains title to adjacent lands, and the easement or right of way is appurtenant to, and essential to the full enjoyment of the adjacent premises, the title to which remains in the grantor. Wade on Notice, sec. 300, and cases cited. Ordinarily, where an easement or right of way only is claimed, in the very nature of the right, the use or occupation of the land will be intermittent and, strictly speaking, not capable of that continuous possession of which lands are ordinarily susceptible. In such cases, notice is necessarily afforded, if at all, by the continued and uninterrupted user, which is analogous to, and in a sense, possession. And the same rule applies, the user must be open, visible and so far exclusive, as to put persons seeing the premises, upon notice thereof.

In this case, appellee retained title to the land on each side of the right of way deeded to the Peoria and Rock Island Railroad Company, and, according to the testimony, so fenced his land that these passage-ways under the railroad were necessarily used in passing from one part of his farm to another. The south opening connected the land lying east of the track with a small pasture field lying west of the railroad, which was separated from his remaining land, on the west side of the

track, by a hedge fence. The north passage-way connected the land lying east of the railroad with another pasture, also lying west of the track. Between these pastures, west of the railroad, was a cultivated field. The only access, unless through this field, between one of said pastures and the main farm, was by the south opening, and from the other by the north passage-way.

It appears that shortly after the railroad was completed and in operation, in 1871, probably, the hedge on the right of way having been cut down, appellee with the brush made a fence on each side of the right of way, leaving openings for unobstructed passage through each of such passage-ways. It is shown by two of the appellee's witnesses that in 1878, when appellant fenced the road, a year and more after its purchase, some of this brush fence was remaining, and while much dilapidated and insufficient to turn stock, was visible.

Under his contracts, appellee was restricted in his use of these openings to passage-ways for his stock; that he made that use of them seems reasonably clear. Being fenced in with, and forming uninterrupted connection between his fields, he had open, visible and exclusive possession and use thereof for such purpose. We agree with the chancellor, that a purchaser of the railroad and right of way, seeing the mode in which appellee's land was fenced, and his use of the openings in the only way the owner of the adjacent lands, who had deeded the right of way, could use them, and seeing that such passage-ways were not fenced up by the railroad, but left open for free and uninterrupted use by such adjacent owner, as a means of communication and passage-way between his fields, would be put upon inquiry as to the rights and title by and under which they were so used. No reasonable man would purchase under such circumstances without inquiry or investigation.

It is familiar, that if the facts and circumstances apparent were sufficient to put appellant, or Cable, through whom it purchased, on inquiry, appellant is chargeable with notice of all

such inquiry would have shown. In *Swan* v. *Burlington, Cedar Rapids & N. Ry. Co.,* 72 Iowa, 650, the plaintiff granted the right of way across his land to a railway company, on condition that it would construct and maintain " a pass-way for cattle and teams under its track." The railway company constructed a passage-way as contemplated, and the plaintiff used it substantially twenty years. The railroad passed to the defendant under foreclosure sale. In a proceeding to restrain defendant from closing the passage-way, it was insisted that the agreement was not binding on the purchaser. The court said : " That its (the passage-way) occupancy by the plaintiff was sufficient to charge the defendant, a purchaser at judicial sale, with notice of the plaintiff's rights thereto arising from the agreement." See, also, *McCann* v. *Day,* 57 Ill. 101.

We are of opinion that the court had jurisdiction to protect appellee in the enjoyment of his rights under his contract. High on Injunctions, secs. 868 and 895 ; *Deere* v. *Cole,* 118 Ill. 165 ; *C. & E. I. Ry. Co.* v. *Hay,* 119 id. 493 ; *Morrison* v. *King,* 62 id. 30 ; *Green* v. *Green,* 34 id. 320.

Other errors are assigned, which we have carefully examined, but do not deem it necessary to discuss. We are of opinion that appellee has shown himself entitled to the equitable relief granted by the decree, and the same will, accordingly, be affirmed.

*Decree affirmed.*