The Baltimore and Ohio Southwestern Railroad Co.

*v.*

Eli Brubaker.

*Opinion filed October 24, 1905.*

1. Records—*contract relating to real estate is entitled to be recorded.* A contract providing that a land owner will convey to a railroad company a strip of land for a right of way upon certain conditions is entitled to be recorded under the statute, as being a contract relating to real estate.

2. Evidence—*what not sufficient proof to justify admission of record.* Testimony by a land owner that he made a contract for the conveyance of right of way to a railroad company and delivered it to the company, which recorded it, and that the contract was not in his possession, is not, of itself, sufficient preliminary proof to authorize admission of the record in evidence to prove the contract.

3. Same—*when sufficiency of preliminary proof cannot be questioned.* An objection that the preliminary proof was not sufficient to justify the admission of a record in evidence cannot be urged on appeal, where the objection to the admission of the record in evidence on the trial did not point out the specific grounds thereof.

4. Contracts—*when a contract and deed comprise one agreement.* A recorded contract for the conveyance of a right of way and a deed subsequently executed in accordance with the terms of the contract will be considered together as constituting one agreement, although the deed was executed several months after the contract. (*Dreiske* v. *Eisendrath Co.* 214 Ill. 199, distinguished.)

5. Specific performance—*when specific performance is matter of right.* Relief by way of specific performance should be granted as a matter of right and not as a matter of favor where all the necessary elements, conditions and incidents which justify such relief are present.

6. Same—*when a contract for a passageway may be enforced against a purchaser.* An agreement by which a railroad company procures a right of way through a farm upon the express condition that it shall construct all necessary passageways to allow the land owner free access to his lands, which agreement is recognized and carried out by both parties for more than fifty years, may be specifically enforced against a railroad company acquiring the right of way at foreclosure and which attempts to fill up a passageway. (*C., C., C. & St. L. Ry. Co.* v. *Munsell,* 192 Ill. 430, distinguished.)

7. Same—*when contract is not abrogated by statute.* A contract whereby a railroad company agrees to construct such farm

crossings and passageways as shall be necessary for the land owner is not abrogated nor qualified by a subsequent statute providing a method of compelling railroad companies to construct crossings, so as to require the land owner to bring an action under the statute instead of seeking specific performance of his contract.

. Writ of Error to the Circuit Court of Marion county; the Hon. William M. Farmer, Judge, presiding.

This is a bill in chancery filed in the circuit court of Marion county by the defendant in error, against the plaintiff in error, asking for a specific performance of an agreement in writing for certain underground crossings under plaintiff in error's right of way, as expressed in a certain agreement for a deed and the deed following said agreement.

The evidence shows that on March 14, 1853, defendant in error was the owner in fee simple of the north-east quarter of the north-west quarter, and the north-west quarter of the north-east quarter of section 15, town 2, north, range 3, east, in Marion county. On that date he entered into a written contract with the Ohio and Mississippi Railroad Company, whereby, for the sum of $32, he sold and agreed to convey by warranty deed to said company a right of way one hundred feet in width crossing the land above described, upon the express condition and consideration that the railroad company should cause to be made, at the points designated by the defendant in error, one or more crossings, and should fence on each side of the right of way and forever keep the fence in repair. Pursuant to this agreement, on July 21, 1853, a deed of conveyance was executed and delivered to the railroad company, in which it was covenanted and agreed that the railroad company should erect and maintain the necessary crossings on said premises, one of which was to be on the east line thereof. There was a creek, running almost north and south, directly crossing the land and the right of way, dividing the premises into two parts. East of the creek there was a depression crossing the right of

way.  The defendant in error was then, and is now, the owner of about three hundred and twenty acres of land, all of which, with the exception of fifty or sixty acres, lies south of the railroad, but his house and barn are situated on the fifty acres north of the railroad.  The railroad company built the road across the premises and constructed a trestle or bridge about one hundred and eighty feet long over the creek and one about one hundred and twenty-seven feet long over the depression east thereof, and under the trestles were left three passageways,—two under the trestle crossing the creek and the other under the trestle over the depression.  The defendant in error built gates corresponding with the openings under the trestles, and constructed and made roads leading from one part of his farm to the other and leading through the gates and through the crossings under the railroad, which gates, crossings and roads were maintained until about August 15, 1903.  The railroad company continued to operate this road until about the year 1899, when it was purchased at a foreclosure sale by the plaintiff in error.  On August 15, 1903, the plaintiff in error, in violation of the agreement, completely filled up the trestle and crossings at the creek, except a narrow passageway on the west side thereof, and completely filled up the trestle and crossing at the depression, thus leaving defendant in error but one passageway, and that very narrow and inadequate. The prayer of the bill was that the plaintiff in error be required to specifically perform the contract to the extent of re-opening and restoring the crossings under the trestle on the west side of the creek and the one under the trestle over the depression.

Upon a hearing before the chancellor a decree was entered ordering the plaintiff in error to open the crossing on the west side of the creek under the railroad at the second bent of the trestle, in direct line with defendant in error's gate on the north side of the right of way, and at the place where the farm road crossed the railroad before the cross-

ing was obstructed, which opening was to be not less than twelve feet wide and fifteen feet in height, and to restore the crossing to the same condition it was in before it was filled up, so that defendant in error would have a direct and easy access from one part of his farm to the other. The plaintiff in error was also ordered by the decree to open the crossing at the trestle over the depression, in direct line with the gate on the north side of the right of way, and at the same place where the road crossed the right of way before the depression was filled up, which opening was to be the same size as the one west of it. From this decree a writ of error has been prosecuted to this court.

L. M. Kagy, Kramer & Kramer, and B. A. Campbell, (Edward Barton, of counsel,) for plaintiff in error.

Frank F. Noleman, and W. F. Bundy, for defendant in error.

Mr. Justice Wilkin delivered the opinion of the court:

A preliminary contract, with a receipt for the money for the right of way, was signed on March 14, 1853. The deed therefor was not executed until July 21, 1853. The contract and receipt were placed upon record. Upon the trial of the cause the record of said contract was offered in evidence and objected to. It is first insisted by the plaintiff in error that the record was not properly admitted in evidence, for the reason that the contract was not such an instrument as under the statute is required or entitled to be recorded, and that the proper preliminary proof was not made in order to entitle the record to be admitted as secondary evidence.

Section 28 of chapter 30, Hurd's Statutes of 1903, provides that deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate, shall be recorded in the county in which such real estate is situated. The contract in question provided that defendant in error would convey to the Ohio and Mississippi Railroad

217—30

Company the one hundred foot strip of land as a right of way, upon condition that the company should cause to be made one or more crossings, leaving a passageway under the bridge over the creek, and should fence the right of way. This contract was one which related to or affected the title to the real estate, and under the foregoing section of the statute was entitled to be recorded. After the contract had been executed it was delivered to the Ohio and Mississippi Railroad Company and recorded in the recorder's office of Marion county. When defendant in error was on the witness stand he testified that he delivered the agreement to the Ohio and Mississippi Railroad Company, and it was afterwards recorded, and that he did not have it in his possession at the time of the trial. Demand was made upon the company to produce it. Section 36 of chapter 30, Hurd's Statutes of 1903, with reference to the admissibility of the record of an instrument, provides that whenever, upon the trial of any cause, any party shall, under oath, state that the original of any deed or other instrument concerning land is lost or not in the possession of the party wishing to use it, and that to the best of his knowledge such instrument was not intentionally destroyed or in any manner disposed of for the purpose of introducing a copy thereof in place of the original, the record of such instrument may be read in evidence with like effect as though the original of such deed or instrument had been produced. The defendant in error merely testified that the instrument was delivered to the Ohio and Mississippi Railroad Company and afterwards placed upon record and was not in his possession. We have held in several cases that such preliminary proof, in itself, was not sufficient, on specific objection, to authorize the introduction of a record. (*Scott* v. *Bassett,* 174 Ill. 390; *Scott* v. *Bassett,* 194 id. 602.) But in this case the objection made to the introduction of the record did not point out the specific grounds of the objection and cannot be urged for the first time upon this appeal. (*Gillespie* v. *Gillespie,* 159 Ill. 84.) If, however, the record

was improperly introduced upon the hearing, we do not see how the plaintiff in error was in any way injured thereby, as the same provisions of the contract were substantially incorporated into the deed subsequently executed.

It is next insisted that even though the preliminary proof was sufficient to admit the record, yet defendant in error is not entitled to have the provisions of this agreement specifically enforced because it was a preliminary agreement, which was subsequently embodied in the deed of June 21, 1853, and there is no evidence in the record that the defendant in error ever signed this agreement. In support of this contention the case of *Dreiske* v. *Eisendrath Co.* 214 Ill. 199, is cited. An examination of that case will show that it is not based upon the same facts as those involved in this case. In that case certain preliminary letters had passed between the parties showing that a subsequent contract was contemplated, and we held that such letters did not amount to a contract which could be specifically enforced. Here the facts are altogether different. The agreement originally entered into was for a conveyance, together with a receipt acknowledging the payment of the consideration, and also an agreement for the passageways, as above described. The deed which was subsequently executed contained substantially the same provisions as the original contract. We are of the opinion that it was the intention of the parties that both instruments should be executed together, and should constitute, in substance, one agreement, and in that view it would make no difference that several months elapsed between the dates of their execution. (*Rock Island and Peoria Railway Co.* v. *Dimick,* 144 Ill. 628.) As to the execution of the agreement, the defendant in error testified, on cross-examination, that he did say that he remembered signing only one paper, but that he might have signed both. The contract was filed for record by the railroad company, and there could be no doubt, from all the facts and circumstances in evidence, that it was executed by defendant in error.

There was no objection made to the introduction of the deed, and it contained the following clause: "And it is understood that said company shall erect and maintain such crossings as may be necessary to the accommodation of persons whose lands are divided by the track, * * * one crossing to be made on the east line of the above track, it being the east line of the land of the undersigned." It is insisted that this contract cannot be specifically enforced even as embodied in the deed, for the reason that it is not clear, certain, unambiguous, specific, definite, complete and unequivocal in its terms; also, that it is a contract which is so varying as to require different constructions under different circumstances. It is undoubtedly the law that the specific performance of a contract will only be enforced where the terms are clear, unambiguous, reasonable and certain. (*Dreiske* v. *Eisendrath·Co. supra.*) But when this contract and deed are construed in the light of the surrounding circumstances they cannot be said to be either uncertain, unreasonable or ambiguous. The right of way was to be one hundred feet wide and across the entire premises. There were two openings or depressions, which were to remain open for passageways. The right of way divided the farm into two parts, the larger part being south of the right of way and the farm buildings on the north. The occupant of the farm would necessarily require openings in order to pass from one part of it to the other, and the contract in question was manifestly intended to so provide by passageways under the right of way. When the trestles were built these openings were left by the company and fences and roads constructed in conformity therewith, which was a clear recognition by the parties of the terms and conditions of the contract, and those acts of recognition continued for more than fifty years. It was not until the present company, the plaintiff in error, acquired the right of way that any attempt was made to repudiate the contract or deprive the defendant in error of the full benefit of his contract.

It is said, however, that the specific performance of the contract rests in the sound discretion of the court, and will not be decreed where it appears that the specific matter insisted upon possesses no value to the plaintiff, or rests only in the realm of fancy, speculation or conjecture, or where the performance would result in hardship or injustice to the defendant; that the crossing in question, on account of being constructed of wood, is a menace to the safety of the employees and other persons using the road; also, that while complainant is entitled to one passageway he ought not to have three. It is undoubtedly the law that the specific performance of the contract is within the sound discretion of the court, and will not be enforced as a matter of course, or where it will impose unreasonable or unjust hardship upon one of the parties without corresponding benefits to the other. However, where all the necessary elements, conditions and incidents are present, relief by way of specific performance should be granted as a matter of right, and not as a mere favor. (*Evans* v. *Gerry*, 174 Ill. 595, and cases cited.) Here, no such hardship or injustice is shown as resulting to the company as to justify a court of equity in arbitrarily refusing to compel a compliance with the contract. The agreement was of the first importance to the defendant in error, and without the benefits of which he would be deprived of the convenient and ordinary use of his farm. The company procured the right of way for a small consideration, upon the express condition that the defendant in error should have free access from and to the various parts of the farm. It is true that it will cost the company a considerable sum of money to preserve and maintain the crossings, but having been left for so many years in compliance with the contract of the parties and having become so permanently fixed, it would be neither equitable nor just to now permit them to be closed up.

The case of *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Munsell*, 192 Ill. 430, and kindred cases hold-

ing that no easement in the right of way under a railroad company can be acquired by prescription, have no application to the case in hand. Here, defendant in error does not rely upon an easement, but upon a contract alleged to have been entered into between himself and the railroad company, and the evidence as to the length of time the passageways have been used and recognized by the parties simply goes to the question of the existence of the contract and the understanding of the parties as to the location of the passageways. The decree of the circuit court is in harmony with the principles announced in *Rock Island and Peoria Railway Co.* v. *Dimick, supra.*

The point that the defendant in error had a complete and adequate remedy at law, either by *mandamus* or by action under the statute to compel the desired opening, is without force. In the first place, the contract here relied upon was executed long before the statute referred to had been adopted. It may be that under that statute the complainant could have acquired one passageway; but his contract was broader than the statute, and entitled him to necessary passageways, three having been left open and recognized as necessary for a long term of years. The passageways claimed were reasonably necessary for the proper use of complainant's farm, and the contract related to the particular conditions and circumstances of the same. The contract was in no way qualified or abrogated by the passage of the statute. Possibly the complainant might have obtained some relief by *mandamus,* but his only complete and adequate remedy under his contract was in a court of equity to compel the performance of the same.

The foregoing views dispose of the entire merits of the case, and other questions raised and discussed become unimportant and need not be decided. We are satisfied that the decree of the court below is in conformity with the law and facts of case and should be affirmed.

*Decree affirmed.*