## Montague & Company, Appellee, v. C. L. Aygarn et al., Samuel Earp et al., Appellants.

## Gen. No. 5510.

1. PLEADING—*effect of answering after demurrer overruled.* By answering over after demurrer overruled, defendants waive their right to assign error on the ruling upon the demurrer.

2. ASSIGNMENTS—*how may be made.* A contract pertaining to an interest in land not being a negotiable instrument, is assignable either upon the back thereof or by separate instrument.

3. ASSIGNMENTS—*effect of assignment of specialty by instrument not under seal.* In equity an assignment not under seal, of a sealed instrument, will transfer an equitable title.

4. ASSIGNMENTS—*when of contract pertaining to land effective.* As between the parties such assignments are effective when made; as against third parties they only become effective upon recording.

5. SUBROGATION—*when doctrine applied though not invoked.* The doctrine of subrogation will be applied in favor of a defendant who has not invoked the same where to fail so to do must result in granting to the complainant greater equities than he has shown himself entitled to.

6. TENDER—*when waiver of will not affect defendant's equitable rights.* A complainant must do equity and he cannot urge a waiver of a tender to defeat a claim for lien where so to do would result in his failing to do equity.

7. INTEREST—*when not recoverable upon money loaned or advanced.* While the statute provides that a creditor is entitled to interest on money lent or advanced, yet if there was a running account, then it is not entitled to interest until after there was an account stated.

8. APPEALS AND ERRORS—*when assignments of error waived.* Assignments of error not argued are waived.

Bill in chancery. Appeal from the Circuit Court of Livingston county; the HON. G. W. PATTON, Judge, presiding. Heard in this court at the April term, 1911. Affirmed in part, reversed in part and remanded with directions. Opinion filed October 13, 1911.

**Statement by the Court.** Montague & Company, a Chicago corporation, on April 29, 1905, filed a bill in chancery in the circuit court of Livingston county, against C. L. Aygarn, D. C. Eylar

and Samuel Earp praying that a claim for money which complainant had loaned to Aygarn be declared a first lien as against the defendants upon certain described elevator property in Pontiac, Livingston county, Illinois. A demurrer by the defendants to the bill was overruled after which defendants filed answers. The bill was afterwards amended by making the Livingston County National Bank a party defendant. The bank filed an answer and the cause was referred to the master in chancery to report the evidence. The court upon a hearing entered a decree in favor of the complainant from which decree the Livingston County National Bank, Eylar and Earp appeal.

The facts in the case are admitted by all the parties to the suit to be correctly found in the decree and are: On March 2, 1903, Samuel Earp, being the owner of certain described lots in Pontiac, in Livingston county, entered into a contract in writing under seal with C. L. Aygarn by which he leased said premises to Aygarn for two years at an annual rental of $77 per year and the taxes. The contract contains a clause that Aygarn shall have the option to purchase said premises at any time during the term of the lease by paying to Earp the sum of $1,100 and all accrued rentals, taxes and assessments. The contract was executed in duplicate, each party retaining an original copy of the contract. Aygarn went into possession of the premises under the lease, erected an elevator thereon, and afterwards became insolvent. Within a few days after making the contract and during March 1903, Aygarn borrowed $4,000 from the Livingston County National Bank and assigned and delivered the contract with other collateral, to D. C. Eylar, the president of the bank, as collateral security for the loan. This assignment was not recorded. Subsequently, and about July 3, 1903, Aygarn, who was a buyer of grain at Pontiac and was shipping grain to Montague & Company, ap-

pellee, at Chicago, called upon appellee at its office in Chicago and said to Montague & Company that he was building an elevator and had a contract for the land and wanted to borrow $1,200 to complete the payment of it, and that he would give appellee an assignment of the contract. Appellee asked Aygarn if he had the contract, and he said no, but he would give appellee an assignment of it, and showed appellee an assignment he had drawn up; he agreed to repay the loan by shipping grain to appellee and not making drafts therefor on appellee. He did not tell appellee where the original contract was, and it does not appear to have asked him where it was.

The instrument Aygarn executed is:

"This agreement made this 2nd day of July, 1903, witnesseth, That Whereas, Samuel Earp, has the 2nd day of March, 1903, given C. L. Aygarn a contract of sale of lots (properly describing them) * * * upon which said contract there is due from C. L. Aygarn to Samuel Earp the sum of $1100 on or before March 2, 1905. with interest from March 2, 1903, and all taxes * * * and whereas said C. L. Aygarn desires occasional accommodations from Montague and Co. of Chicage, Ill., it is hereby agreed that Montague and Co. of Chicago, Ill., shall hold the interests of said C. L. Aygarn in said contract over and above the interest of said Samuel Earp as hereinbefore stated, to secure them for any advantage, loans or overdrafts upon which said Aygarn may be at this time or may in the future become indebted to said Montague and Co. Witness our hand and seals this 3rd day of July, 1903. Christopher L. Aygarn. Witness, John H. Wheeler."

Upon the execution and delivery of this instrument, appellee advanced to Aygarn $1,200 and subsequently advanced further sums amounting to $645.75, making $1,845.75 due from Aygarn to appellee when the bill was filed.

On February 12th, or 13th, 1904, Aygarn not having paid appellee, the secretary of appellee went to Pon-

tiac and interviewed Aygarn and then went to Earp
and offered to pay him $1,100 and demanded a deed.
Earp refused to make a deed unless appellee would
produce the original contract properly endorsed. This
appellee did not and could not do for the reason the
bank held the original contract endorsed to it. Ap-
pellee thereupon filed for record, in the recorder's
office in Livingston county, the instrument Aygarn had
given it and on February 20, 1904, notified Earp in
writing that on July 2, 1903, Aygarn had assigned to
appellee all his interest in the contract of sale of said
premises dated March 2, 1903, and that appellee's as-
signment was recorded in the recorder's office in Liv-
ingston county in Volume 138 of Deeds on page 148,
and that appellee was ready to pay the $1,100 due on
the contract and demanded a deed of the premises to
appellee under its assignment. On February 22, 1904,
appellee again tendered the $1,100 to Earp and de-
manded a deed, and Earp again said he was not will-
ing to make a deed unless the original contract was
produced. Appellee again tendered the $1,100 before
the master but kept the money and did not bring it
into court or tender it on the trial.

On April 13, 1905, the Livingston County National
Bank paid to Earp the sum of $1,148, the amount due
on the contract of purchase, with the accrued rent, and
received a deed of the premises to J. M. Lyon, its
cashier. On April 18, 1905, Lyon who took the deed
for the benefit of the bank sold and conveyed the prop-
erty to Earp for $3,647.

The trial court held that because the instrument exe-
cuted July 3, by Aygarn to appellee was recorded and
the assignment by Aygarn to Eylar as president of the
bank on the back of the original contract was not re-
corded, that the claim of appellee for a lien against
the premises was superior to that of any and all the
appellants. It finds there is due to appellee from
Aygarn the sum of $1,845.75 and that the same is a

first lien on the premises described in the contract and that there is due Eylar, trustee for the bank, the sum of $4,000, which is a second lien, and orders that Aygarn pay to appellee within thirty days the sum of $1,845.75 with legal interest from the date of the decree and the costs and that Aygarn pay Eylar, trustee for the bank, the sum of $4,000 with legal interest and in default of payment by Aygarn or some of the defendants that the premises be sold by the master in chancery, and that out of the net proceeds after the payment of the costs that the master pay to appellee said sum of $1,845.75 with interest, if sufficient is realized to pay the same, and if sufficient be not realized to pay the whole of said sum with interest, then that he apply the same to the extent it may reach in satisfaction thereof, and if the premises sell for more than sufficient to pay appellee then that the master apply the remainder if any to the extent of its claim to the bank so far as it will go in satisfaction of the amount due the bank.

A. C. NORTON, F. A. ORTMAN and R. R. WALLACE, for appellants.

C. F. CARRITHERS and WELTY, STERLING & WHITMORE, for appellee.

MR. PRESIDING JUSTICE GEORGE W. THOMPSON delivered the opinion of the court.

Appellants insist that the court erred in overruling the demurrer to the bill. After the demurrer was overruled appellants filed answers. By answering over after the demurrer was overruled they have waived their right to assign error on the ruling upon the demurrer (Bauerle v. Long, 165 Ill. 340; Anderson v. Olsen, 188 Ill. 502), except in so far as they may have the same advantage on final hearing, of the failure of the bill to state a cause of action and as to jurisdictional defects.

The main contention of appellants is that the equities

of the appellant bank are prior to the equities of appellee. The decree finds that the advances made by appellee and the bank and the assignments taken by them respectively from Aygarn were in good faith on the part of the assignees. Aygarn had a written lease from Earp with an option in it to purchase the real estate described in it at any time within the lifetime of the lease upon the payment of $1100. Within a few days after the lease and option to purchase was delivered to him he assigned and hypothecated the lease and option to purchase, to the appellant bank, to secure a loan of $4000 made to him by the bank. Thereafter Aygarn made valuable improvements on the property by building an elevator thereon. He then secured a loan from appellee of $1200 and subsequently a further loan of $645.75 on the faith of an assignment of the lease and contract that he already had assigned to the bank, the assignment made to appellee being on a separate paper. The appellee had no knowledge of the assignment of the contract to the bank until after appellee had filed its assignment for record in the recorder's office of Livingston county. The bank had no notice of the independent assignment of the contract by Aygarn to appellee. Aygarn, who is insolvent, was in actual possession of the property for which appellee and appellant bank each believed it held a contract transferring to itself all the equity of Aygarn.

The contract that Aygarn received from Earp was an assignable contract. Perkins v. Hadsell, 50 Ill. 216; Guyer v. Warren, 175 Ill. 328; Adams v. Peabody Coal Co., 230 Ill. 469. That contract, unlike a promissory note, giving the grantee certain rights in real estate, could be assigned and transferred either by an assignment on the paper itself or upon a separate instrument. 4 Cyc. 40. Neither the assignment to appellee nor that to appellant is under seal, although the original contract is under seal, but it has been held that in equity an assignment not under seal, of a sealed instrument,

will transfer an equitable title. Barrett v. Hinckley, 124 Ill. 32. Section 28 of chapter 30 of the Statutes (Hurd's) provides that: "Deeds, mortgages, powers of attorney and other instruments relating to or affecting the title to real estate in this state shall be recorded in the county in which such real estate is situated." Section 30 provides that "All deeds, mortgages and other instruments of writing which are authorized to be recorded shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice until the same shall be filed for record." The word "subsequent" as used in the recording act has reference to the recording and not to the date of the instrument, and while the transaction between a grantor and a grantee is complete upon the execution and delivery of the instrument, yet as between the grantee and third persons without notice, it is not complete until the instrument is filed for record. Doyle v. Teas, 4 Scam. 202; West Chicago Street Ry. Co. v. Morrison, 160 Ill. 288.

Any instrument affecting or relating to title to real estate may be recorded, although not acknowledged, and will operate as constructive notice to subsequent purchasers or creditors (Reed v. Kemp, 16 Ill. 445; Willoughby v. Lawrence, 116 Ill. 11; B. & O. S. W. R. R. Co. v. Brubaker, 217 Ill. 462), and the recording of an equitable title to land operates as constructive notice, to the same extent as the recording of the legal title, to those who deal with the person having the equitable title or interest or others claiming under him. Powell v. Jeffries, 4 Scam. 387.

Appellants, Eylar and the bank, having failed to record the assignment of the contract held by them, had no equitable title that could affect the rights of third parties who without notice of the rights of appellants

might secure the interest of Aygarn, who was in possession of the premises. Appellee by placing its equitable assignment on record before it had any notice of the equities of Eylar or the bank, secured, for its equitable right and title, precedence over any right of Eylar or the bank. The trial court properly held that the advances made by appellee on the faith of its assignment were a prior lien to the loan made by the bank on the strength of the assignment to its president.

The decree contains no provision or order concerning the repayment of the $1146 that the bank paid to Earp to secure the deed which clearly was a lien prior to any claim of appellee. Appellee had notice that the $1100 and rent was due to Earp, and the bank having paid that, the grantee of the bank should have been subrogated to the rights of the bank in that regard. Appellee argues that appellants have not asked that the doctrine of subrogation be applied to the case. Appellee is the complainant and is the party asking for equitable relief, and can only have such relief as it is equitably entitled to. The allegations of the bill show the equities of the parties concerning the sum paid Earp in the original contract. Appellants, defendants, are contending that all the equities in the property they are in possession of are with them. The decree should have preserved to appellants any equities they were entitled to.

Appellants insist that appellee by not making the tender on the trial and keeping it good has waived its right to its prior lien. We cannot agree with that contention. The parties are in a court of equity and must do equity. The court should have decreed that the sum of $1146 and legal interest thereon from the time that sum was paid by the bank for the deed should have been paid to Earp, the grantee of the bank, from the first proceeds of the sale after the payment of costs, then the sum due appellee should be paid with legal interest from the date of the decree and the remain-

der if any should be paid to Earp the holder of the legal title by deed from the bank.

Appellee has assigned as a cross error that the trial court erred in not allowing interest on the money advanced by it to Aygarn. While the evidence shows that $1200 was advanced by appellee to Aygarn about the time the assignment of July 2, 1903, was made to appellee, it also shows that Aygarn continued to ship grain to appellee in large quantities and drew drafts on appellee until some time in February, 1904. The sum due appellee appears to be a balance due on an open account and there is no evidence of an account stated.

Appellee has made no argument or statement showing how it claims it is entitled to interest. While the statute provides that a creditor is entitled to interest on money lent or advanced, yet if there was a running account then it is not entitled to interest until after there was an account stated. As the record now is the court did not err in refusing to allow interest to appellee and it, by failing to argue or discuss its assignment of cross error, has waived such assignment. Brewer & Hoffmann Brewing Co. v. Boddie, 162 Ill. 346; Duggan v. Ryan, 211 Ill. 133; Davenport Etc. R. R. v. DeYaeger, 112 Ill. App. 537.

The decree of the court is affirmed in so far as it finds the lien of appellee to be superior to that of the bank for the loan made to Aygarn but is reversed because it does not find that the sum paid by the bank to Earp to secure the deed was a first lien prior to that of appellee. The cause is remanded with directions to enter a decree pursuant to this opinion.

*Affirmed in part and reversed in part, and remanded with directions.*