GERALD L. DAUGHTERS, Plaintiff and Counterdefendant-Appellee, v. JULIUS J. PRESTON, JR., *et al.*, Defendants and Counterplaintiffs-Appellants.

Third District No. 3—84—0395

Opinion filed March 12, 1985.—Rehearing denied April 19, 1985.

Edward C. Moehle, of Moehle, Swearingen & Day, Ltd., of Pekin, for appellants.

724

James D. Reynolds & Associates, of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Gerald L. Daughters filed this action in the circuit court of Tazewell County to quiet title to 14 acres of real estate which he purchased in November of 1980. The defendants, Julius and Bernadine Preston, and Richard and Wilma Mudd, answered Daughters' complaint, alleging that they had been in possession of the premises for some 20 years prior to the purchase by Daughters. In addition, the defendants filed a countercomplaint against Daughters, affirmatively seeking to quiet their alleged title to the disputed tract. Upon the completion of a bench trial in the circuit court, a judgment was entered granting the relief prayed for by the plaintiff, Daughters. This appeal by the defendants followed.

The title history necessary to understand the factual basis for this dispute dates back at least as far as 1955. In that year, the defendants, Prestons, first acquired title to a lot on Fischer Road in Groveland Township of Tazewell County. Fischer Road runs east and west, and the "1955 lot" has 50 feet of road frontage and is 245 feet deep. In August 1958, the Prestons acquired a deed to a second lot on Fischer Road, this "1958 lot" being immediately to the west of the "1955 lot" and also being 50 feet east and west and 245 feet north and south.

On the same date, the Prestons acquired a deed to a one-acre parcel of land lying immediately north of the two lots previously described. Included in the legal description on the deed to the "1958 acre" is a 30-foot wide strip of land lying just north of the westerly extension of the northern boundary of the "1958 lot" and just west of the northerly extension of the western boundary of the "1958 lot." This deed to the "1958 acre," although delivered and dated August 2, 1958, was not recorded until a later date.

In 1960, the Prestons entered into a contract to purchase a strip of land 30 feet wide and lying immediately west of the western boundary of the "1958 lot." A deed to this strip was acquired in 1966. The "1966 strip" is immediately south of the 30-foot strip described in the deed to the "1958 acre." Again, this deed to the "1966 strip," although delivered and dated December 7, 1966, was not recorded until a later date. On the same date, the Prestons executed and delivered a deed to the defendants, Mudds, which deed described and purported to convey the west 10 feet of the "1966 strip." This deed, too, was not immediately recorded.

On November 20, 1980, the plaintiff, Daughters, received a deed to a 14-acre parcel immediately north of and adjacent to the land de-

scribed in the deed to the "1958 acre." The legal description in the Daughters deed included the 30-foot strip described in the deed to Prestons of the "1958 acre" and the entire length of the "1966 strip," excepting therefrom the 10-foot strip described in the conveyance from Prestons to Mudds. It seems that a predecessor in title common to both the Prestons and Daughters, one Fred H. Milhahn, had conveyed the same 30-foot wide parcel twice, in 1958 and 1966, to the Prestons and in 1968 to Daughters' grantor.

According to the plaintiff, Daughters, he discovered the Prestons' claims to the disputed tract before he recorded his deed, but after acquiring same, and he talked to the Prestons and the Mudds to advise them of the situation. This prompted the Prestons to record the deeds they had previously received, and according to the recording information which appears on the face of the instruments, the deed to the "1966 strip" was recorded by the Tazewell County Recorder at 9:23 a.m. on November 24, 1980, and the deed to the "1958 acre" was recorded at 9:24 a.m. the same day. The Daughters deed, which included the disputed tract, was not recorded until 10:38 a.m. on the same November day.

At the trial of this cause in the circuit court, the plaintiff contended that he was a subsequent purchaser, *i.e.*, that he purchased the disputed tract in 1980 subsequent to the Prestons' purchases in 1958 and 1966, and that he did not have notice of the Prestons' interest in the disputed tract. In asserting that he had paramount title to the disputed tract, Daughters relied on a section of "An Act concerning conveyances" which provides:

> "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." Ill. Rev. Stat. 1983, ch. 30, par. 29.

Daughters argues that at the time he purchased and received his deed, on November 20, 1980, the Prestons' deeds were not filed for record, and therefore he was a subsequent purchaser and the claim of the Prestons, as represented by their deeds executed in 1958 and 1966, was void *vis-a-vis* his subsequent deed. In answer to this position, the Prestons and the Mudds presented evidence that Daughters had actual notice of their claim to the disputed strip, that they had perfected title to the property by reason of their continuous, hostile or adverse, actual,

open and notorious and exclusive possession of the premises for 20 years (Ill. Rev. Stat. 1981, ch. 83, par. 1), and that they had perfected title to the property by reason of their possession of the premises and payment of taxes thereon for seven years (Ill. Rev. Stat. 1981, ch. 83, par. 6). There was, indeed, substantial evidence heard by the circuit court which supported the defendants' position. There was considerable testimony that the plaintiff knew, or should have known, that the defendants were in actual possession of and made claim to the disputed tract. There was significant testimony concerning the acts of dominion and control that the defendants exercised over the property for a period of 20 years. Finally, the records of the Tazewell County treasurer supported the defendants' contention that they had paid the taxes assessed on the premises for a period in excess of seven years. Nevertheless, the circuit court, weighing all the evidence, concluded that none of the affirmative matters proffered by the defendants was proved by a preponderance of the evidence. Accordingly, holding that the plaintiff was a subsequent purchaser without notice of the defendants' claims, the trial judge entered a judgment for Daughters.

In his brief filed before this court, the plaintiff, Daughters, asserts that "[t]he critical time for determining whether the plaintiff was in fact a bona fide purchaser for value and without notice was the *time he acquired his deed*, not the time he recorded it." (Emphasis in original.) It is apparent from the judgment rendered below that the trial judge held this same view. We believe the decisions of the reviewing courts of this State have taken a contrary position.

In a decision affirming the decree of the circuit court of Hancock County, wherein Stephen A. Douglas was the trial judge, the Illinois Supreme Court discussed this contrary position. The discussion occurred in the context of resolving a dispute over the ownership of lands located in Hancock County. It seems that Joseph B. Teas entered into an agreement for deed with James Doyle, and subsequently Teas executed and delivered a deed to the same premises to Charles Munson. In determining whether Munson had record notice of the prior agreement for deed, the court observed:

> "The agreement of [Teas and Doyle] is dated the 23d of May, and is recorded on the 19th of June, 1835. Intermediate the date and recording of this agreement, on the 26th of May, the deed to Munson is dated, but it was not recorded till the 26th of June, seven days after the agreement was recorded. As the effect of a compliance with the recording act was to operate as constructive notice to all the world, that the object is as much accomplished by the recording of an agreement as of a deed. What then would

have been the effect on Munson's title, had Doyle received a deed with date and record the same as the agreement? Beyond all doubt, his deed being prior in date, and first on record, and *bona fide*, must take precedence of one subsequent in date and subsequently placed on record. The word subsequent, as used in the recording act, must have reference to the recording, and not to the date of the instrument, and such indeed is its literal and grammatical construction. As between the grantor and grantee, the transaction is complete upon the execution and delivery of the deed; but as between the grantee and third persons, without notice, the purchase may be said not to be complete till the title paper is left for record. So here, as between Teas and Doyle, the purchase was complete such as it was, upon the execution and delivery of the agreement, but as to third persons it was not complete, until the 19th of June, when the record was made; and by the same rule Munson's purchase was not complete till the 26th, seven days after. As Doyle completed his purchase, such as it was, first, he must be entitled to the benefit of his superior vigilance and earlier date." *Doyle v. Teas* (1843), 5 Ill. (4 Scam.) 202, 252-53.

The rule set forth in the *Doyle* case has been subsequently followed in other decisions. *Reed v. Kemp* (1855), 16 Ill. 445; *Montague & Co. v. Aygarn* (1911), 164 Ill. App. 596.

Applying the *Doyle* rule to the facts of the instant case, it is apparent that as between Daughters and his grantor, the transaction was complete upon execution and delivery of the deed on November 20, 1980; but as between Daughters and third persons, without notice, the purchase was not complete until the deed was left for record. The transactions between Prestons and their grantors were complete as to third persons on November 24, 1980, at 9:23 and 9:24 a.m., when the record was made. As the Prestons completed their purchase first, albeit only by one hour, they must be entitled to the benefit of their superior vigilance and earlier date. The strip of land deeded to the Mudds was specifically excepted from the Daughters' deed, and it follows that Daughters has no claim to title thereto.

Based on the preceding analysis, we conclude that the decision reached by the circuit court was incorrect, and must be reversed.

Reversed.

STOUDER and WOMBACHER, JJ., concur.